## Estate of Tettemer

*Karl Y. Donecker*, for Accountants.
*Thomas F. Traud, Jr.*, for Upper Saucon Township.

COYNE, *P.J.*, August 4, 1981—Edward W. Tettemer died intestate on August 28, 1977, survived by five adult children. On September 7, 1977, letters of administration were issued by the Register of Wills of Lehigh County to James H. Tettemer and Eva M. Krapf, two of decedent's five children.

The first and final account of James H. Tettemer and Eva M. Krapf, Administrators of the Estate of Edward W. Tettemer, deceased, was filed with this court on August 17, 1979 and shows a balance for distribution in the amount of $62,500 which represents the value of a tract of farm land containing upwards of 24 acres located in Upper Saucon Township, Lehigh County, Pa. of which decedent died seised. All five children have joined in the distribution requesting that the real estate be divided into five parcels and that one parcel be distributed to each child.

Written objections to the proposed schedule of distribution were filed on behalf of Upper Saucon Township by its solicitor on September 19, 1979 on the grounds that the proposed distribution violates the Township's Municipal Subdivision Ordinance and that the court is without power to partition the real estate unless and until the approval of the proposed division by the township authorities is first obtained.[1]

A hearing was set for December 13, 1979 at which time the parties presented to the court a stipulation of facts. Pursuant to this stipulation there were made a matter of record the township "Comprehensive Plan" (Exhibit A), the township "Subdivision and Land Development Ordinance" (Exhibit B), Township "Resolution No. 78-15" (Exhibit C), which establishes a schedule of fees to be charged subdividers of land within the township and Township Resolution No. 78-21 (Exhibit D)

---

1. No one has questioned the standing of the township to file objections to the statement of proposed distribution. In fact, the personal representatives deliberately notified the township authorities of the audit of this account in an effort to bring this problem before this court.

which requires a subdivider to contribute $275 per lot to the Upper Saucon Recreation Fund to be used for recreational purposes where the subdivision is intended to provide housing for fewer than 25 families. In addition, the stipulation sets forth that the township has a zoning ordinance which "restricts the use of all land within the township and requires an owner to obtain a building permit before erecting any structure on the land and that the heirs have not applied to the township authorities for subdivision approval pursuant to the Subdivision and Land Development Ordinance nor have they paid or offered to pay any of the fees" required by Resolutions 78-15 and 78-21. Lastly a plan of the proposed partition (Exhibit E) has also been made a matter of record.

The exclusive jurisdiction of the orphans' court over partition of a decedent's real estate has been recognized from the earliest times and numerous legislative acts were passed with respect thereto, including sec. 32(a) of the Fiduciaries Act of June 17, 1917, P.L. 447 (repealed) and Section 320.734 of the Fiduciaries Act of April 18, 1949, P.L. 512 (repealed). The latter act authorized the orphans' court to divide, partition and allot property among distributees in cases where distribution in kind was requested. This power of the orphans' court to partition real estate and make distribution in kind was reenacted in Section 3534 of the Probate, Estates and Fiduciaries Code of 1972[2] in the following form.

"The court, for cause shown, may order the estate to be distributed in kind to the parties in interest, including fiduciaries. In such case, when there are two or more distributees, distribution may be made

2. Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §3534.

of undivided interests in real or personal estate or the personal representative or a distributee may request the court to divide, partition and allot the property, or to direct the sale of the property. If such a request is made, the court, after such notice as it shall direct, shall fairly divide, partition and allot the property among the distributees in proportion to their respective interests, . . . "

Pursuant to Section 301(b) of the Probate, Estates and Fiduciaries Code[3] legal title to decedent's real estate passed at his death to his five adult children, "subject, however, to all the powers granted to the personal representatives by this code and lawfully by the will and to all orders of the court." The personal representatives have now concluded their administration of decedent's estate during which they have not exercised their power to sell the real estate, have filed their final account which is now before this court for audit and confirmation and have petitioned this court to distribute the assets in hand to decedent's heirs. However, the only asset in hand for distribution is the real estate in question and the heirs have requested the court to distribute the land in kind according to a scheme of partition agreed upon among themselves pursuant to the authority of sec. 3534, supra.

The enactment of the Pennsylvania Municipalities Planning Code of 1968[4] (hereinafter called MPC) vested the governing body of each municipality with the power to regulate the subdivision and development of land. The purpose of the MPC, as stated in section 10105[5] is "to accomplish a coordinated development of municipalities, other than

---

3. Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §301(b).
4. Act of July 31, 1968, P.L. 805, 53 P.S. 101 et seq.
5. Act of July 31, 1968, P.L. 805, as amended by the Act of June 1, 1972, P.L. 333, 53 P.S. §10105.

cities of the first and second class; . . . and to permit municipalities, other than cities of the first and second class, to minimize such problems as may presently exist or which may be foreseen." Section 10501 of the MPC[6] permits governing bodies of municipalities to regulate subdivision and land development by enacting ordinances dealing with such matters, and pursuant to this authority Upper Saucon Township enacted its Subdivision and Land Development Ordinance on June 24, 1975 (Exhibit B).

Section 510 et seq. of that ordinance requires that any and all plans for a subdivision be submitted to the township planning commission for approval before subdivision may be made. In addition, all subdivision plans shall be approved or disapproved by the township board of supervisors. Section 630 of the ordinance specifically mandates that a person, partnership, or corporation owning any land within the township limits who agrees to enter into a subdivision without complying with the provisions of the ordinance shall be guilty of a misdemeanor and may be fined not in excess of $1,000 per lot or parcel involved in the transaction.

On December 12, 1978, Upper Saucon Township, by resolution No. 78-15, adopted a schedule of fees (Exhibit C), applicable to the Township Subdivision and Land Development Ordinance and pursuant to which fees totaling $950 would be payable by the heirs of Edward W. Tettemer, deceased, if they applied for subdivision. On December 12, 1978, Upper Saucon Township adopted Resolution 78-21 (Exhibit D), which pursuant to the authority contained in Section 283.3 of the aforementioned Township Ordinance requires that "In proposed

6. Act of July 31, 1968, P.L. 805, as amended by the Act of June 1, 1972, P.L. 333, 53 P.S. §10501.

subdivisions intended to provide housing for fewer than 25 families, the developer shall contribute $275 per lot to the Upper Saucon Township Recreation Fund and such contribution shall be used for recreational purposes." Pursuant to this resolution, if applicable to the Tettemer case, the heirs would be required to pay the township $1,375.

The question before us is whether the authority of the orphans' court to partition and distribute a decedent's real estate in kind to his heirs is in any way restricted by the provisions of a township ordinance and regulations promulgated pursuant thereto regulating the subdivision of land. We think not.

The thrust of the accountant's argument is that township approval of the proposed partition and distribution is not required because the proposed partition does not fall within the definition of "subdivision" as stated in Appendix A of the Township Ordinance and in Section 10107(21) of the MPC, both of which define "subdivision" as follows:

"'Subdivision,' the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, transfer of ownership or building or lot development; provided, however, that the division of land for agricultural purposes into parcels of more than ten acres, not involving any new street or easement of access, shall be exempted."[7] [8]

---

7. 53 P.S. § 10107(2). Appendix A of the Township Ordinance is identical with this statutory provision with the exception of a few variances in punctuation and capitalization.

8. The exemption does not apply in this instance because each of the tracts to be distributed among the five heirs contains less than ten acres.

The accountants contend that since the proposed distribution in this case is not for any of the purposes set forth in that definition the proposed partition cannot possibly be a "subdivision" within the intent and clear meaning of the MPC and the Township Ordinance. In the first place, there is not the slightest suggestion that the proposed partition is for the purpose of "lease" or "building or lot development." Neither does the proposed partition constitute a "transfer of ownership" for it has long been established that a voluntary partition operates only to sever the unity of possession and does not create or confer on the parties any new, different or additional title. McClure v. McClure, 14 Pa. 134, 136-137 (1850). The effect of a partition is not to alter the titles of the parties, but to designate the boundaries. Goundie v. Northampton Water Company, 7 Pa. 233, 238 (1847).

Further support for petitioners' position that partition is not a transfer of ownership exists in Johnson v. Gaul, 228 Pa. 75, 77 Atl. 399 (1910) and Fry v. Stetson, 370 Pa. 132, 87 A. 2d 305 (1952), where the courts held that partition is a *possessory* action, its purpose and effect being to give to each of a number of joint owners the possession to which he is entitled of his share in severalty. Thus the nature of partition is quite different from the concept of subdivision which involves the division of land for sale or development.

Counsel for the township has argued, first, that because the decedent would not have been able to divide this parcel of land during his lifetime without obtaining the approval of the township planning commission and the Board of Supervisors, his rights should be no greater after death than during life. secondly, he contends that under the MPC, the

court of common pleas plays no role in the subdivision or zoning procedure until such time as the decision of the governing body has been rendered and an appeal is taken. MPC, § 11001 et seq.[9] Prior to the time that an appeal has been entered, there is no provision in the MPC for court intervention in the legislative function of the governing body in determining whether or not a subdivision or land development is in the best interests of the municipality and should be permitted. Therefore counsel for the township contends that should the court grant the proposed distribution, it would be intervening to decide a non-justiciable issue in violation of both the MPC and the township ordinance.

We find no merit in these arguments. First of all, the contention that the decedent's rights are greater after death than during life will not bear examination because it is not the decedent who is requesting partition and it is not his rights which are involved. To the contrary it is his children in whom the real estate vested upon his death by operation of law who are requesting partition and whose interests in the land, as we have noted, are quite different and distinct from those of decedent.

We also reject the argument that there is no justiciable issue upon which this court can act until such time as the decision of the municipality's governing body has been rendered or an appeal has been taken. We are not stting as a "super" planning board nor are we intervening in the legislative function of the governing body in determining whether or not a subdivision or land development is in the best interests of the municipality. Section

_____

9. Act of June 1, 1972, P.L. 333, 53 P.S. § 11001 et seq.

711(1) of the Probate, Estates and Fiduciaries Code[10] confers jurisdiction upon the court of common pleas, to be exercised through its orphans' court division, of "the administration and distribution of real and personal property of decedents' estates . . ." Section 3534 of the Probate, Estates and Fiduciaries Code specifically provides for distribution in kind of real estate and for partition by the orphans' court division. It is those powers which the court is now exercising in treating with the assets of this estate and consequently there would seem to be little question of the jurisdiction of this court over the matters before us.

We believe that this situation is unique and was not contemplated by the legislature in its definition of subdivision. We have been unable to find any reference in the subdivision laws to a change in the partition laws or to a restriction of the jurisdiction of the orphans' court. Nor is there any provision in the Probate, Estates and Fiduciaries Code for alterations in the law of partition and distribution of estates to comply with the MPC. In the absence of legislative action, we are reluctant to expand the definition of subdivision to include the partition proposed by the accountants, particularly in view of the penalty provisions contained in the township ordinance.

The case of Pratt v. Adams, 229 Cal. App. 2d 602, 40 Cal. Rep. 505 (1964), involved the use of a partition proceeding to circumvent the subdivision ordinance. Two husbands and their wives owning property jointly conveyed undivided interests to 12 members of their group and ultimately obtained

---

10. Act of June 30, 1972, P.L. 508, as amended December 10, 1974, P.L. 867, 20 Pa.C.S.A. §711(1).

partition into 38 separate parcels. When building permits were denied, they brought an action in mandamus to compel the issuance thereof. The court denied mandamus, not because a partition proceeding was void under the subdivision ordinance but because the court would not assist, by the equitable process of mandamus, the fulfillment of a fraudulent plan to circumvent the law.

No fraud has been alleged in the case at bar. So far as the record reveals, the five heirs are merely seeking partition of the decedent's real estate to which they received title by operation of law. It is somewhat farfetched to suggest that a scheming developer would die in order that his heirs might acquire title by inheritance and thereby avoid the requirement of seeking municipal approval of a subdivision of his land.

However, in Williamson v. Avant, 21 N.C. App. 211, 203 S.E. 2d 634 (1974) plaintiffs contracted to purchase a five-acre tract of land located in Guilford County provided defendant was able "to convey a good and marketable title free and clear of all encumbrances . . . " except those expressly stated in the contract. Pursuant to this agreement, plaintiffs paid a $500 deposit which was to be refunded if defendant could not deliver good and marketable title.

The land involved was conveyed to defendant in August, 1970 by a deed containing the following reference: "according to survey and unrecorded plat of T.D. Alley property made by Kenneth A. Vaughn, R.L.S., July, 1970, and being designated as Lot No. 7 on said plat." The conveyance was made for the purpose of dividing up the real estate of the late T.D. Alley among the heirs of T.D. Alley.

The division of the land was never approved by the County Commissioners. Plaintiffs refused defendant's tender of a deed to the property, contending that noncompliance with the Subdivision Control Ordinance of Guilford County constituted a defect of title. The ordinance was not made a part of the record, but that portion of the ordinance available to this court was set out in the judgment, as follows:

"The sale of land in subdivisions which have not been approved by the County Commissioners is prohibited. Any person who, being the owner or agent of the owner of any land located within the jurisdiction granted to the Commissioners by GS 153-266.1, hereafter subdivides his land in violation of this ordinance or transfers or sells such land by reference to, exhibition of, or any other use of a plat showing a subdivision of the land before the plat has been properly approved under said ordinance and recorded in the Office of the Register of Deeds, shall be guilty of a misdemeanor. The description by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring land shall not exempt the transaction from this penalty. The County, through its County Attorney or other official designated by the Board of County Commissioners, may enjoin such illegal transfer or sale by action for injunction."

The lower court concluded that although the 1970 conveyance to defendant involved a subdivision which violated the Guilford County ordinance, defendant nevertheless tendered a deed which would convey good and marketable title with the result that plaintiffs were not entitled to a refund of their deposit. Plaintiffs appealed.

The Court of Appeals of North Carolina held that defendant had indeed tendered a marketable title and affirmed the lower court, but in so doing declared that they were unable to sustain the lower court's conclusion that the 1970 deed to defendant "constituted a subdivision within the definition of the Guildord County Subdivision Control Ordinance." The Court of Appeals declared that "[a]lthough we agree with the trial court's determination that defendant tendered marketable title, we are unable to sustain his conclusion of law that the 1970 deed to defendant 'constituted a subdivision within the definition of the Guilford County Subdivision Control Ordinance.'"

"The statute authorizing the Guilford County ordinance prohibits a county from regulating 'the platting and recording of subdivisions in any manner other than through the adoption of an ordinance pursuant to . . . this article.' G.S. §153-266.1 only authorizes an ordinance regulating the platting and recording of any 'subdivision of land *as defined by this article.*' (Emphasis added.) G.S. §153-266.7 defines a subdivision as: 'A "subdivision" shall include all divisions of a tract . . . into two or more lots . . . for the purpose, whether immediate or future, *of sale or building development . . . .*' (Emphasis added.)"

"The court found as a fact that the 1970 'conveyance was made for the purpose of dividing up the real estate of the late T.D. Alley among the heirs of T.D. Alley.' There is no dispute as to this finding. Thus the 1970 conveyance to defendant did not constitute a division of land for immediate or future sale or development within the meaning of G.S. §153-266.1 et seq. and was not subject to regulation

thereunder. For the reasons stated, the judgments affirmed."

The township has presented no evidence that the partition and distribution proposed here either interferes with the orderly development of the municipality or creates public problems in the slightest degree, that the proposed distribution and partition violates any of the standards set forth in its township ordinance or that the proposed partition violates the comprehensive plan. In any event, the township will not lose its regulatory power with respect to the tracts of land distributed in accordance with the proposed schedule of distribution. If at any time in the future an owner of one of these tracts proposes to build or otherwise improve the property, a permit will be required from the township under its zoning ordinance.

To summarize then, both the legislature and the township have defined subdivision as a division of a tract of land "for the purpose of lease, transfer of ownership or building" or for "lot development," but where, as in the case before us, there is no lease, no transfer of ownership, no proposed building and no proposed development, there is no subdivision. That being so we hold that the township subdivision ordinance and attendant regulations have no application to the situation before us. Accordingly, we shall dismiss the township's objections to the statement of proposed distribution and approve the same as submitted.

Returning to the account, we find that counsel for the accountants has furnished us with a statement of additional receipts and expenditures occuring since the closing date of the original account. According to this statement the personal representa-

tives have received additional net income in the amount of $286.88. When the original account balance is supplemented by this figure, we find that the accountants have in hand for distribution the real estate valued at $62,500 and $137.01 in cash. These figures do not, however, allow for payment of closing costs. If such costs exceed the cash balance in hand, the heirs will have to make up the difference, but for the purposes of adjudicating this account we shall credit that cash balance to closing costs.

Turning now to distribution, we note that the accountants have furnished us with a statement of proposed distribution in which they have divided the real estate into five tracts and proposed that one such tract be awarded to each of the five heirs. Since the tracts are not identical in size or value, a proportionate part of the total value of the land has been assigned to each tract and the differences in values are to be adjusted through payments of cash. This proposal is somewhat complicated by the fact that Eva M. Krapf has claimed and is entitled to receive the family exemption. Since the only asset in hand is the real estate, consideration must be given to the payment of $2,000 to Eva Krapf when calculating the various amounts of cash to be paid in by the respective heirs.

According to an amended schedule submitted by the accountants it is proposed to distribute the land as follows:

To Robert W. Tettemer a tract containing 5.491 acres valued at $8,200;

To James H. Tettemer a tract containing 6.776 acres valued at $10,200;

To Paul E. Tettemer a tract containing 4.444 acres valued at $6,600;

To Ralph R. Tettemer a tract containing 4.159 acres valued at $6,200; and

To Eva M. Krapf a tract containing 2.917 acres valued at $31,300.

However, in order to equalize these distributions Eva Krapf will have to pay, subject to adjustment for satisfaction of the claim for the family exemption, to each of the other heirs a sum of money representating the difference between $12,500 and the value of the tract to be conveyed to each of the other heirs. This sum amounts to $4,300 in the case of Robert W. Tettemer; $2,300 in the case of James H. Tettemer; $5,900 in the case of Paul E. Tettemer; and $6,300 in the case of Ralph R. Tettemer. Or to put it another way, Eva Krapf will have to pay to the other heirs a total of $18,800 subject to adjustment for satisfaction of her claim for the family exemption.

With reference to the claim for the family exemption, it is only necessary to reduce by $400 the payments from Eva Krapf to the other four heirs set forth above in order to satisfy that claim. As a result the sum of money due from Eva Krapf will be reduced from $18,000 to $17,200.

All of the heirs have acquiesced in the foregoing scheme of distribution and we shall incorporate the same in the decree of distribution to be appended hereto.

Notice of the filing of the account and of the call thereof for audit, together with a copy of the account, was hand delivered to all of the parties in interest and forwarded by certified mail to Upper Saucon Township as evidenced by the affidavit of

service which has been filed with the court and to which affidavit is attached a copy of the notice and return receipt card.

## DECREE

And now August 4, 1981, it is ordered and decreed that the objections filed on behalf of Upper Saucon Township to the proposed distribution of decedent's real estate be, and the same are, dismissed herewith; that the first and final account of James H. Tettemer and Eva M. Krapf, Administrators of the estate of Edward W. Tettemer, deceased, be, and is, confirmed subject to the foregoing adjudication; and that the accountants are directed to distribute the balance in hand, to wit, $62,500 consisting of real estate in kind as hereinafter set forth.

## OPINION

COYNE, *P.J.*, October 21, 1981—On August 4, 1981 we filed our adjudication of "The First and Final Account of James H. Tettemer and Eva M. Krapf, Administrators of the Estate of Edward W. Tettemer, deceased," dismissed objections to the statement of proposed distribution filed on behalf of Upper Saucon Township, confirmed the account and directed distribution of decedent's real estate in kind among decedent's five children in accordance with a plan of partition submitted to the court. The township has now filed an exception to this court's decree nisi.

The township's exception is aimed at the portion of our decree nisi which awarded a portion of decedent's farm containing approximately 23½ acres to each of decedent's five children. The township contends that this decree in fact subdivides land

lying within the township, that approval of this subdivision by the township is required under its Subdivision and Land Development Ordinance and that absent such approval the distribution directed by this court is contrary to law.

The fact is that the township in its brief in support of its exception has presented no argument which was not raised in support of its objections, has simply incorporated its brief on objections into its brief on its exception and has contented itself with pointing out that this court is setting a precedent based on "130 year old opinions stating partition is not a transfer of ownership" which elevates the Orphans' Court Division "to the position of a 'super municipal planning' agency thereby involving this court in matters outside judicial expertise" and "in an area where it simply does not belong." These charges were considered in our adjudication and rejected. In the absence of any legal authority—of which exceptant's brief is wholly devoid—in support of the exceptant's contention or the presence of a compelling argument, which has not in the writer's opinion been presented to the court, we are not inclined to depart from the conclusions arrived at in the auditing judge's adjudication.

In light of the fact that subdivision ordinances are in derogation of the common law and constitute a restriction upon the full and free use of one's property, they are to be strictly construed against the municipality. Gulf Oil Corporation of Pennsylvania v. Warminster Township Board of Supervisors, 22 Pa. Commw. 63, 348 A. 2d 485 (1975). With this basic principle in mind we are not constrained to expand the definition of "subdivision" as expressed in the Pennsylvania Municipalities

Planning Code of 1968[11] or in the Township Subdivision and Land Development Ordinance[12] to apply to the instant situation. Although counsel for the exceptant continues to contend that the division of the subject premises among decedent's heirs represents a "transfer of ownership" within the meaning of the statute and the ordinance, he again offers no authority in support of his argument and contents himself with criticizing the age of the authorities cited in the auditing judge's adjudication. Be that as it may, those authorities, ancient though they may be, still, in our opinion, represent the law on the subject and therefore we shall abide by the conclusion reached in the auditing judge's adjudication that a transfer of ownership is not involved in the partition decreed by this court. That being so, it is abundantly clear that the definition of "subdivision" as set forth in the statute and ordinance aforementioned do not include a partition of real estate such as this court has directed. For this reason as well as the others cited in the adjudication of the auditing judge, we are of the opinion that the township's exception to the decree nisi of this court is not well taken and we therefore enter the following

## DECREE

And now, October 21, 1981, it is ordered and decreed that the exception filed on behalf of Upper

---

11. Section 10107(21), Act of July 31, 1968, P.L. 805, 53 P.S. § 10107(21).

12. Subdivision and Land Development Ordinance of Upper Saucon Township.

Saucon Township to the decree of this court dated August 4, 1981 partitioning decedent's real estate into five parcels and directing distribution of the parcels among decedent's five children be, and the same is, dismissed.