Wilcox v. Wilcox, No. 96-03-06 Bncv (Suntag, J., Feb. 18, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                     BENNINGTON SUPERIOR COURT
BENNINGTON COUNTY                                 DOCKET No.  96-3-06 Bncv


Howard Wilcox

     v.

Gerald Wilcox, Vermont Land
Trust, Vermont Housing and
Conservation Board, and Vermont
Department of Taxes,


### Findings, Conclusions and Order – Petition for Partition

Over the course of eleven days throughout the September 2008 – September 2009 judicial term of the Bennington Superior Court, hearings were held on this petition for the partition of a 404 acre parcel of land located in the town of Manchester. Plaintiff is represented by Attorney Norman Cohen and defendant is represented by Attorney Michael Nawrath. [1] The property is currently held as tenants in common by two brothers, Howard and Gerald Wilcox. The property has been owned by the Wilcox family for generations.  It has historical significance having been farmed for generations and is now one of the dwindling numbers of family dairy farms operated in Vermont.  It has been an important part of the community. When, due to fire, circumstances became dire, the community helped rally financial support to allow the Wilcox brothers to continue operations.

In addition to the farm, under different names over the years, Howard Wilcox has primarily been responsible for an ice cream manufacturing business which is also well

---

[1]  The Court wishes to express its appreciation for the extraordinary job counsel have done in handling and presenting a case of great complexity in facts and law made even more challenging by the dynamics of the parties' relationship. Both parties as well as the Court have been very well served by the abilities and professionalism of counsel.

known to the community and elsewhere. Generally, Howard Wilcox has focused his energies on the ice cream business while Gerald Wilcox has primarily focused his energies on maintaining the farming operation. In short, a partition of this property between the brothers will inevitably change and effect desires and historical uses of the property as well as impact, at least to some degree, the ability of the brothers to continue the farming and ice cream manufacturing businesses.

The decision to divide the property and suffer whatever impact will result is a decision for the parties not the Court. Each brother owns an undivided 1/2 interest in the entire property and despite many years during which it had been clear to all that the property could no longer be cooperatively owned and operated in the present manner, the parties have been unable to reach any resolution which could assure that both have the best opportunity to attempt to pursue their main property interests. The Court has much more limited authority and ability to divide the property in a manner that would best serve both brothers' interests than would the brothers themselves if they were able to reasonably consider their respective needs and desires. This concern has been expressed to the parties throughout this litigation by more than one judge.

Due to the hostility in the brothers' relationship clearly demonstrated during these hearings, Howard has been unable to re-build an ice cream manufacturing plant to replace the facility on the property which had been destroyed by fire. Gerald has been unable to freely operate a farm and construct structures necessary to efficiently continue that operation. Due to the brothers' inability to cooperate, he has been unable to rebuild a barn which had been destroyed by fire and was an integral part of his farming operation. It is this ongoing hostility and inability to reasonably resolve their

2

differences to best serve both which has brought this dispute to the Court.

As has been previously determined by this Court and mandated by Vermont case law, it is clear that the Court's primary mandate is to divide the property so that each brother receives an amount of property which has a monetary value to which he is entitled. The fact that Howard wishes to manufacture ice cream on the property and Gerald wishes to farm the property cannot prevent this division by the very nature of the law's mandate even if the required division proves it more difficult or even impossible for the brothers to make ice cream or farm the property. The parties have chosen this course and the Court is left with no option other than that required by the law. To the extent that after division the parties may yet be able to continue use of the property consistent with its legacy, a possibility the Court will do its best to accommodate, the Court can only join in what would appear to be the community's desire and wish both brothers well.  Perhaps after partition, hostility will abate.

After hearing each party's evidence and arguments as to how each brother should be awarded a portion of the whole property with a value of more or less than 50% of the total property value, the Court reached a decision that Howard is entitled to 49.5% and Gerald to 50.5% of the value of the property.  See previous orders. The parties have stipulated to a value of $1,776,500 for the entire parcel. Consequently, the Court's mandate is to divide the property so that Howard receives sufficient property valued at $879,368 (49.5% of total value) and Gerald receives sufficient property at $897,133 (50.5% of total value). The Court invited the parties to present specific proposals to accomplish the mandated value division in keeping, as best as possible, with that brother's desire for future use of the property and other equitable concerns. In

3

the end, however, as the Court and law has been made clear to the parties, although the Court would attempt to accommodate the desires of each brother regarding the manner within which the property would be divided, the primary mandate is to ensure the required value division.

The parties have further stipulated that per acre values for different sections of the property are as presented in the appraisal of William Scranton (Plaintiff's Exhibit #1). Consequently, not subject to dispute, are the values for the following parcels:

1) Homestead with 2 acres valued at $300,000;

2) 140 acres of open and wooded farm land valued at $7000 per acre total $980,000;

3) 165 acres of forest and recreation land at $1500 per acre totaling $247,500;

4) 2.8 acres of commercial land totals $84,000;

5) 10 acres of agricultural land between Wilcox Road and Route 7A valued at $6000 per acre totaling $60,000;

6) 84 acres (in two parcels) of conserved land (Vermont Land Trust) valued at $1250 per acre totaling $105,000.

The parties have submitted proposals for division of the property. In some respects the proposals are in agreement and the Court will honor the parties' requests where identical although separately submitted:

1) The 165 acres of forest and recreation land valued at $1500 per acre totaling $247,500 is awarded to Howard Wilcox;

2) The 2.8 acre commercial lot valued at $84,000 is awarded to Howard Wilcox;

4

3)  Howard Wilcox will be awarded a 3 acre parcel as an alternate site for construction of an ice cream manufacturing plant, although the parties disagree on the boundaries of that parcel. Howard seeks a separate 3 acre parcel located south of the homestead and 2 acre parcel, which would be valued at $21,000. Gerald seeks an award to Howard of the homestead and 2 acre parcel combined with an additional one acre parcel;

4)  Howard Wilcox will be awarded a 54 acre parcel of conserved land located on the east side of Route 7A valued at $67,500;

5)  Gerald Wilcox will be awarded a 30 acre parcel of conserved land located west of Wilcox Lane valued at $37,500;

6)  Gerald Wilcox will be awarded a 10 acre agricultural parcel located west of 7A and east of Wilcox Lane valued at $60,000.

7)  The larger share of the so-called "open and wooded farm land" will be awarded to Gerald Wilcox.

The parties disagree as to the following:

1)  The boundaries for the 3 acre parcel to be used as an alternative ice cream plant site;

2)  Which party should be awarded the homestead and 2 acres, each party requesting that the other be awarded such property valued at $300,000 with Gerald proposing that the homestead parcel plus an additional acre be awarded to Howard, thereby meeting Howard's need for an alternative ice cream manufacturing plant site;

3) The resulting size and boundaries for the larger portion of the open and wooded farm land to be awarded to Gerald Wilcox and the smaller portion to be awarded to Howard Wilcox.

As noted by the parties in their filings, a determination of which brother will be awarded the homestead and 2 (or 3) acre parcel will in large part determine the remaining division, as the allocation of that $300,000 (or $307,000) value will require a greater or lesser portion of the open and wooded farm land, the most valuable property on the entire parcel, to be awarded to meet the property value requirements of the division.

Each party also ascribes various ulterior motives to the other when responding to the other party's proposals. The Court need not delve into each party's claims that the other party is motivated by something other than good faith concerns. Nothing constructive would be gained by such an analysis. The Court will continue to proceed under the reasonable assumption that each brother proposes a property division intended to be most suited to that brother's desired future use regardless of whether in the end such a division would negatively impact the other brother's intended future use.

Gerald, therefore, proposes a more complex and balkanized division of parcels in order to seek an award within the constraints of the law of this case of the largest share of the prime agricultural land in order to best continue his farming operation. He does so even if such division places the brothers in continued close proximity where the lack of cooperation might well impact each brother's enjoyment of their property.

Howard, less in need of prime agricultural land than Gerald for Howard's

6

intended future plans, seeks a less complicated division of property in order to more clearly separate the brothers' parcels from each other, insulate each as much as possible from the other's continued hostility, yet have sufficient alternative parcels to build an ice cream manufacturing plant. He does so even if such division lessens Gerald's capacity to continue his farming operation.

Nevertheless, the ongoing hostility demonstrated even in the brother's respective filings with this Court does demand some consideration. It is clear that one appropriate equitable consideration for the Court is to minimize contact and the necessity for ongoing cooperation between the two brothers in order to best facilitate each brother's future use and enjoyment of their property.

After considering all the testimony, exhibits and arguments of counsel, the Court determines that the homestead and 2 acre parcel as described in the stipulated appraisal of William Scranton, shall be awarded to Gerald Wilcox. This 2 acre parcel is described by the stipulated appraisal, the Court finds, to include the farmhouse, a silo, a manure pit, the remains of the old ice cream plant and the partially reconstructed barn. (Plaintiff's Exhibit #1 - attached map of "boundaries from tax map"). A separate 3 acre parcel located south of the homestead will be awarded to Howard Wilcox, which is part of the 140 acre open and wooded farm land parcel described in the appraisal and valued at $7000 per acre. This then necessitates a division of the remaining open and wooded farm land as near as possible to Howard receiving 65.62 ($459,410) acres of that property and Gerald receiving 71.38 ($499,633) acres of that property.

This division of property, while complying with the applicable property value mandates of this case, divides the property into two large and separate parcels, except

7

for the two ice cream manufacturing parcels located along Route 7A and Old Route 7 and the 54 conserved land parcel located on the East side of Route 7A. [2] This division will result in an award to Gerald of a contiguous 100 acre plus parcel, all of which he now uses in his farming operation and may continue to do so. It has the benefit of creating fewer new parcels than that proposed by Gerald. It will avoid the necessity for the Court creating one or more easements in favor of one party or the other necessary to maintain water lines to the property of each across the property of the other. It divides the prime agricultural land in a manner which will run according to a boundary that pre-existed. That is, a more or less north-south boundary across the open and wooded farm land proposed by the plaintiff runs along a boundary between the Wilcox property and an older farm, known as the "Bishop Farm", which had been joined with the Wilcox property prior to the parties' ownership of that property.  Of the two proposals submitted this proposal would, while apportioning property to meet the mandatory values which must be awarded to each other, require the least amount of future interaction and intertwining of property affairs between the brothers, thereby lessening the opportunities for their hostility to interfere with the enjoyment of their property.

The Court will review the details of this decision regarding the respective proposals concerning the homestead parcel, the additional 3 acre parcel to Howard and the division of the remainder of the 140 acres open and wooded farm land in that order. All facts found are determined to have been established by a preponderance of the relevant, credible evidence. To the extent that evidence was introduced but not

---

[2] This parcel, although of greater use to Gerald than Howard, must be awarded to Howard as acknowledged by both parties so as to avoid apportioning even a greater portion of the prime agricultural land to Howard.

mentioned in this decision, that evidence was found to be cumulative, not credible or irrelevant.

**Homestead**

The so-called "Homestead" parcel consists of 2 acres as determined by the stipulated appraisal. Although there is some dispute as to where Mr. Scranton drew the boundaries of the 2 acres surrounding the old farmhouse and whether the two acres were meant to include all of the structures in the vicinity, the Court finds that the two acre parcel is as depicted on Plaintiff's Exhibit #1 and its attached map. It includes the farmhouse, the partially reconstructed barn, a silo, a manure pit and the remains of the old ice cream plant. Plaintiff's proposal maintains this parcel as described. The northern boundary of the parcel commences at the southern boundary of neighboring lands.[3]

Defendant proposes to create a 3 acre parcel surrounding the farmhouse and define that parcel as the Homestead with an additional acre. Defendant's proposed parcel appears to have a different northern boundary than that of plaintiff's proposal (See FN1 Defendant's Proposed Order of Partition – dated August 3, filed August 5, 2009) but regardless and more importantly would divide the foundation of the partially reconstructed barn, awarding one section to each party, a proposal which the Court finds unreasonable.

The original barn burned in a fire. The original ice cream manufacturing and distribution facility has also burned. According to the defendant, he incurred $200,000 to

---

[3] Described as lands now or formerly owned by Stroup.

commence rebuilding the original barn. [4] No reconstruction of the ice cream facility has begun. The farmhouse itself was the home of the parties' parents while alive. Once the parties took over the operation of the property from their parents, they reached an agreement with the parents which resulted in the brothers' joint ownership but with a requirement that they support their parents in the farmhouse until they passed. Although during step two of these proceedings the parties disputed the amount of maintenance the other provided to their parents, it was and is clear that both contributed in various forms to some degree.

The farmhouse has since been partially used for administrative purposes by Vermont Original Ice Cream, the current owner of the ice cream business. No evidence was presented to suggest that that space is needed for such use in the future, especially since the manufacturing and distribution facility is no longer located in the same location. Periodically, members of the family have stayed in the house. Neither party nor any of their children currently reside in the farmhouse and there was no evidence presented to suggest that any such person will wish to reside in that home in the future. The parties have both constructed homes on land that is near but outside the jointly owned property. Neither party has put forth evidence to suggest that either has a need or use for the farmhouse at this time. The farmhouse appears to simply be a structure at this point that must be divided with no less than two acres which neither party seeks. What is clear is that whichever party is required to take the farmhouse

---

[4] Construction of this barn was halted by the Court's injunction issued April 27, 2006. The parties disagree as to the reasons this injunction was issued, each ascribing various bad faith motives to the other. The Court, J. Wesley, ordered a halt to all capital improvements by either party until the partition action was resolved, a decision made necessary by the circumstances and the respective positions of the parties.

parcel worth $300,000, the other party will of necessity be entitled to a greater share of the open and wooded farmland, the most valuable property on the entire parcel.

The farmhouse currently shares a driveway which provides access for Gerald to his primary farmland. The farm operation is a constant and travel up and down the driveway with various farm equipment, is also a constant. Gerald has proposed moving his access road some distance from the farmhouse, but even that access would not be of such a distance that the farmhouse would be physically separate and clearly disconnected from the farming operation. Should the property be awarded to plaintiff, plaintiff's parcel will abut and be in close contact with defendant's ongoing farming operations and all of its attendant activity. Should defendant be awarded this property, he will have no need to construct a new access road to his lands nor will he need to have any concern about plaintiff's use of the homestead parcel and any impact that use might have on defendant's farming operation.

The driveway is not the only source of entanglement between the parties should plaintiff be awarded the homestead. The water source for the farmhouse commences at a spring located on what both parties agree will be land awarded to the defendant but subject to rights held by the Vermont Land Trust. A water line runs from that spring to the farmhouse and then continues further onto property solely owned by the defendant and serves his current residence and the "dome barn" he constructed once the Court enjoined his reconstruction of the old barn. Unless this water service changed, awarding the homestead to plaintiff would require each party to be granted easements across the lands of the other to maintain that water source. Defendant has proposed diminishing this problem by installing a "T" in the water line west of the homestead so that the water

11

to his home and barn could be diverted around the homestead parcel while maintaining the water source to the homestead.

Counsel have suggested and the Court agrees that the Court does have the authority to provide for water rights and easements for maintenance purposes in addition to ordering the partition of a spring in a partition action. 12 V.S.A. Sec. 5161 and see *Sclafani v. Dweck*, 856 A.2d 487, 492 (Conn.App.Ct 2004)("We agree with those courts that have held that 'the power to grant easements in a suit for partition is necessarily implied in the court's power to make the partition.'" (internal citation omitted). Although the Court may have this authority, and even accepting defendants' offer to divert the water source to his home and barn around the homestead parcel, should plaintiff be awarded the homestead, he would still need access to defendant's land and possibly Vermont Land Trust permission to access the spring and water line to the homestead located on defendant's land. Should defendant be awarded the homestead parcel, there would be no need for any such easement, any "T" installation, any water line diversion, any need for construction of a new access to defendants' farmland and no property line running through the partially reconstructed barn foundation as proposed by defendant. Such a division as proposed by defendant would, of course, increase costs and prohibit any possibility of defendant completing the unfinished barn on the same foundation as commenced thereby precluding any chance of recovery of the $200,000 loss defendant claims resulted from the mandated cessation of that construction.

Awarding the homestead and 2 acre parcel to defendant would provide him with unfettered access to his farmland, ownership of his partially reconstructed barn,

12

unfettered access to the water source for his home and dome barn as well as the homestead and a more full disengagement from his brother and his brother's property, a significant consideration for the Court as discussed earlier. This is a parcel that has always been connected to the farming operation and complex which in the end explains why attempting to splice it off into the ownership of one not associated with that farming operation in the future is so logistically difficult. The homestead and 2 acre parcel more fully described in the order below will be awarded to the defendant.

**Alternative 3 acre plant site**

Both parties agree that Howard should be awarded a 3 acre parcel to be used as an alternative site for construction of an ice cream plant, should the 2.8 acre "commercial" lot not be viable. Defendant proposes that this 3 acre parcel include the homestead parcel with an additional acre. Plaintiff proposes to be awarded a separate 3 acre parcel located south of the homestead beginning such distance from the farmhouse so as to meet set-back requirements of the town of Manchester should such apply to this division. This parcel is part of the 140 open and wooded farm land parcel appraised at $7000 per acre. Defendant's proposal has been rejected by virtue of the Court's decision regarding the homestead parcel. Plaintiff's proposal will be accepted by the Court.

As part of this discussion, counsel have disagreed as to the impact of Manchester zoning and subdivision rules upon the Court's authority to partition jointly owned property. This issue will be discussed in more detail below. For the present issue, however, the question is whether the Court need be concerned about set-back

13

requirements of Manchester rules when setting the boundaries of this 3 acre parcel. Whatever the necessity of compliance with local subdivision and land use rules or plans, the matter here involves a distinct issue. That is, whether local set-back requirements limit this Court's authority in any manner, the Court here is simply setting a boundary between two parcels subject to partition. The fact that plaintiff desires to construct a plant on the newly created parcel after partition does not impact the authority of the Court to divide the land. Should plaintiff wish to construct a plant on this parcel after partition, he will need to address whatever local or state rules; permit requirements and the like are required. However, to the extent that creating a boundary line that might avoid a future problem with a specific local set-back requirement is reasonable, there is certainly no harm in doing so. Consequently, the Court will accept plaintiff's request that the line between his new 3 acre parcel and the southerly homestead parcel line be sufficiently south of the hedgerow located south of the farmhouse to meet a possible 25 foot set-back requirement.

Plaintiff's additional request that this line be drawn so as to meet other possible zoning requirements cannot be adopted. Not knowing what those requirements are now and not knowing whether plaintiff will be truly able to construct a plant on this site for an indefinite time, delaying the final boundary determination for such an indeterminate period will only increase the likelihood of further discord and litigation between the parties. This would be irresponsible of the Court and foolish for the parties.

The Court will, therefore, adopt plaintiff's proposed description of the 3 acre parcel, but with a modification of the location of the northeast corner which will be located at a point 25 feet south of the hedgerow, a distance which should be sufficient

to meet any future set-back requirements of concern.

## **Division of 140 (137) acres of "Open and Wooded farm Land"**

In consideration of the decisions reached above, the remaining issue concerns division of the remaining 137 of the original 140 acre so-called "open and wooded farm land" parcel appraised by Mr. Scranton as stipulated by the parties. The stipulated appraised value for this acreage is $7000 per acre. In order to meet the requirements of the division of property value of this order, Howard would need to be awarded 65.62 ($459,410) acres of this parcel and Gerald awarded 71.38 ($499,633) acres of that property. The fact that Gerald must be awarded property which would be contiguous with that property already awarded to him is uncontested. The contest revolves around whether the 137 acre parcel is to be divided as proposed by plaintiff or defendant, divided in a manner requiring essentially one new boundary separating plaintiff's parcel to the west from defendant's parcel to the east, or to divide the parcel into four sub parcels to accommodate defendant's desire for a greater proportion of the prime agricultural land.

Defendant has argued that in making this division the Court must do so in a manner such that any newly created "subdivisions" comply with the Manchester zoning ordinances and town plan. He argues that his proposal would more likely comply than plaintiff's proposal. Plaintiff argues that the Court's authority to divide property jointly held by brothers in a partition action is not subject to a municipality's zoning or planning regulations. Plaintiff does not suggest, however, that any future use of the partitioned property by either party would somehow be exempt from such requirements. In any

15

event, plaintiff argues that his proposed division would be likely to comply with the local ordinances and plan.

The Court requested the parties to brief the issue of whether the Court must comply with local zoning or other regulations when partitioning property between two family members who currently each own an undivided half interest in the property to be partitioned. Counsel have briefed the issue. The Court must determine this issue as a preliminary matter.

The Manchester Zoning Ordinance (MZO) defines "development" in part as "[t]he division of a parcel into two or more parcels . . . ."  That definition tracks the definition of "land development" in 24 V.S.A. § 4303(10).  The MZO further provides that "[a]ll land development, as defined in this Ordinance, requires a permit."  Defendant argues that court-ordered physical partition is the division of land and is therefore "development," and as such requires a permit, or at least must conform to the MZO.  The Supreme Court has held that under this language, *subdivision* is a form of development. *Drumheller v. Shelburne Zoning Bd. of Adj.*, 155 Vt. 524, 529 (1990).  The parties have not cited any Vermont authority as to whether court-ordered physical *partition* is "development."  Authority from other jurisdictions appears to be mixed.

There is some authority for the proposition that a court ordering partition cannot divide a parcel in such a way as to violate zoning regulations.  In *Schroeder v. Lawhon*, a Florida appellate court held, without much discussion, that the trial court "erred in ordering a partition of the property that would result in causing a parcel to be assigned to one of the parties to be nonconforming to the existing zoning regulations."  922 So. 2d 285, 295 (Fla. Dist. Ct. App. 2006).  The trial court had apparently ordered that one

16

party receive a parcel of 1.25 acres, where the applicable zoning regulations required a minimum of two acres for a building site. *Id.* The Court of Appeals of Washington reached a similar conclusion in *Friend v. Friend*, 964 P.2d 1219, 1222 (Wash. Ct. App. 1998) ("[D]ivisions made under the partition statute are not exempt from land use regulations."). Defendant cites *Ankenbrandt v. Shannahan*, No. D052576, 2009 WL 850152 (Cal. Ct. App. 2009) for a similar proposition.

But authority to the contrary is more persuasive. In *Leake v. Casati*, the Supreme Court of Virginia addressed squarely the question "whether a chancellor, in deciding whether the land may conveniently be partitioned in kind, is controlled by the provisions of local ordinances regulating the subdivision of land." 363 S.E.2d 924, 925 (Va. 1988). The Supreme Court concluded the answer was no: "the power of a court of equity to effect partition in kind is unaffected by statutes and ordinances regulating the subdivision of land." *Id.* at 927.

A Pennsylvania court, probating the estate of a decedent survived by his five adult children, divided the decedent's real estate into five parcels, one for each child. *In re Tettemer's Estate*, 26 Pa. D. & C.3d 745, 745-46 (Pa. Ct. Com. Pleas 1981). The township in which the property was situated filed objections, arguing that the court lacked the power to partition the real estate unless and until township authorities approved the division under the township's subdivision ordinance. *Id.* at 746. On appeal, the question was "whether the authority of the orphans' court to partition and distribute a decedent's real estate in kind to his heirs is in any way restricted by the provisions of a township ordinance and regulations promulgated pursuant thereto regulating the subdivision of land." *Id.* at 750. "We think not," said the court. *Id.* The

17

court basically reasoned that the proposed partition did not fall within the definition of "subdivision" within the township ordinance. See *id.* at 750-51.

Some states have enacted rules that positively require partition orders to comply with zoning and subdivision rules. E.g., Cal. Code Civ. Procedure § 872.040 ("Nothing in this title ["Partition of Real and Personal Property"] excuses compliance with any applicable laws, regulations, or ordinances governing the division, sale, or transfer of property."). Vermont does not appear to have such a rule or statute. Some states specifically define "development" to include partition. See *Carlsen v. City of Portland*, 8 P.3d 234, 239 n.3 (Or. Ct. App. 2000). Again, that is not the case in Vermont.

One New York case suggests that if a party proves that a partition violates a town's subdivision regulations, then that could tend to prove that the value of the property would be so diminished by the partition that physical division should not be ordered. *Schwartz v. Meisner*, 603 N.Y.S. 2d 626, 627 (N.Y. App. Div. 1993). Defendant has cited *Ankenbrandt v. Shannahan*, No. D052576, 2009 WL 850152 (Cal. Ct. App. 2009) for a similar proposition. In this case, however, defendant has simply failed to provide sufficient evidence for the Court to reach any such conclusion. That is, even if the town subdivision regulations were to apply to the Court's order of partition, defendant has failed to supply sufficient evidence to convince the Court that any impact on the property value to which the parties have stipulated would be so diminished for each parcel partitioned as to make physical division unreasonable. Nor has evidence been presented to demonstrate that the stipulated per acre values would be of some other per acre value due to failure to meet local regulations so that the Court could then apportion the parcels in a manner which might still provide the economic equity

18

required.  In other words, neither Mr. Scranton who authored the stipulated appraisal nor any other witness offered evidence of specific value recalculation due to the impact of local regulations on any of the parties' specific proposals.

The parties did offer evidence to suggest that certain proposals by the other party would not be approved by local zoning and town land use authorities. Neither party's evidence suggesting that the other party's proposal could not or would not be approved, however, was sufficiently convincing. To the extent, therefore, that a finding that one proposal or another would be both subject to and rejected by local authorities, thereby deflating the stipulated value at least by inference, no such finding can be made.

Defendant argues that if a Court could order physical partition that is inconsistent with local regulations or plans, such would open up a loophole for abuse.  The Court concludes, however, that there is adequate protection against such abuse should a party attempt to circumvent local regulations or plans subsequent to the partition.  The case law suggests that courts will not tolerate or condone the use of partition to circumvent zoning regulations.  In *Lloyd v. Hughes*, a city planning commission denied a partnership's request for a "lot split" on a parcel owned by the partnership.  C.A. No. L-80-254, 1981 WL 5540, at *1 (Ohio Ct. App. 1981).  The partnership then conveyed the property to its two partners, one of whom shortly thereafter brought an action for amicable partition, and the court ordered partition. The latter partner then requested a zoning certificate from the city, which was denied on the grounds that the lot did not meet subdivision rules regarding lot dimensions. The precise question before the appellate court was not the propriety of the partition, but whether the city's subdivision rules applied to lots created by partition rather than the process of subdivision.  The

19

appellate court concluded that the partition did not entitle the partner to a zoning certificate or building permit "unless the parcel so partitioned meets the subdivision rules and regulations of the city." *Id.* "To hold otherwise," said the court, "would permit the avoidance of duly enacted rules and regulations designed to promote the public health, safety and general welfare." *Id.*

Similarly, a California case demonstrates that where, as defendant fears might happen, parties attempt to use partition to circumvent a subdivision ordinance, courts will not compel a planning board to grant building permits on the lots as partitioned, because "[t]he courts will not assist, by equitable process, the fulfillment of [such a] plan." *Pratt v. Adams*, 40 Cal. Rptr. 505, 509 (Cal. Dist. Ct. App. 1964). There is adequate protection to prevent the abuses suggested by defendant after partition.

This Court concludes that local zoning or other local subdivision regulations do not and cannot override a Court's partition of property jointly held by these parties. Neither party has asked this Court to determine whether they may in fact further subdivide or develop in any other manner the property they will be awarded in this partition action. Should the parties seek to further develop and or subdivide the parcels the Court will be partitioning, it is then that local authority must be accommodated. To require otherwise could lead to interminable delays while local boards and the Court bounce the case back and forth until a final partition which meets the legal and equitable mandates of the Court and the local land use mandates of a municipality are all adequately accommodated before any final land division could be made. This would all be so prior to any landowner even seeking or proposing any use or actual development of the land partitioned in any manner other than for which it is currently

20

used. Neither party in this case has suggested that they would not be subject to any and all applicable local oversight should they subsequently seek to develop or further subdivide their property awarded here. Since the Courts will not support any potential abuse of the partition process designed to avoid subsequent compliance with local zoning or other development/subdivision regulations, fears of such abuse are unreasonable.

The Court's remaining task, therefore, is to determine how the remaining 137 acres of the "open and wooded farm land" parcel should be equitably partitioned in order to reach the financial values required. That is, Howard is entitled to the value of 65.62 acres of this parcel and Gerald is entitled to the value of 71.38 acres. Much of the testimony presented on this issue is no longer germane. For example, given the decision to award the homestead parcel to the defendant, much of the evidence offered to support a proposed division should the homestead parcel be awarded to the plaintiff, thereby requiring a greater portion of this parcel to be awarded to defendant, is now of little assistance.

There was also much expert and other testimony devoted to how the acreage might best be divided so that such "subdivision" would meet the requirements of local zoning, subdivision and town plan reviews. Although the Court appreciates the efforts of Mr. Speath and Mr. Helmetag in this regard, their expert testimony regarding potential local authority approval of various partition proposals disagreed with each other. Both had sufficient expertise to offer such opinions. The fact that two qualified experts in this field could not agree as to whether local subdivision or town plan regulations would allow or prohibit the various proposed divisions, in the end, served only to confirm that

even if the Court had concluded that such considerations were a necessary component of the Court's partition decision, achieving a reliable prediction of how local authority might consider the property division was unlikely. Neither party presented sufficient evidence to convince the Court that any of their proposals had a greater or lesser chance of approval by local authority than any other. This was one reason why the Court had suggested to the parties that they agree on one expert to review all proposals and work with that expert's best predictions. Unfortunately, the parties chose to offer competing experts with the most likely result. The Court is unable to rely on either. In any event, this Court has already determined that compliance with local land subdivision regulations is not required for a partition decision between the two property owners in this case.

From the now material and most relevant evidence presented, the Court does find as follows. Plaintiff resides off the western boundary of the property. Defendant resides off the eastern boundary. Defendant's farm operation is located on the eastern portion of the property including his barns and equipment. Defendant's farmland already awarded as requested includes the 30 acres of conserved land to the immediate west of the homestead property and immediately east of the remaining 137 acre parcel in question. Awarding defendant a portion of the 137 acre parcel which will be contiguous with the property already awarded allows for him to maintain a farm on land in a contiguous unit. In short, all of defendant's contacts and needs are to the east of this property and plaintiff's are primarily to the west. The exception includes two potential ice cream plant sites which will border a main road, there being no other reasonable site

for such a plant[5] and the 54 acres of conserved land that is awarded to plaintiff on the eastern side of Route 7A only because it must to do so to avoid defendant getting even less of the prime agricultural land.

Plaintiff has proposed a boundary line of the 137 acre parcel which essentially runs north and south effectively dividing the property into two large parcels, east and west. Defendant has proposed a division which would require the creation of four sub-parcels (See Defendant's Proposed Order, FN 5, dated 8/3/09 filed 8/5/09). Plaintiff's proposal would in large part re-establish an old property line between the Wilcox Farm and the Bishop Farm along which there currently runs a hedgerow.

Defendant testified that any division of property other than the one he has proposed would make it impossible for him to continue his farming operation. He testified that he would not have enough pasture/crop land left to support his operation. Yet defendant also testified that even his current land availability is insufficient and he needs to lease or use 150 acres of others people's property in order to support his operation. He testified that he has needed to do so for many years and long before any partition action was filed.

Of the portions of the open and wooded farm land now sought by both parties, the evidence established that approximately 20 of those disputed acres are usable for defendant's pasture/crop purpose. In other words, if the partition was made according to plaintiff's proposal, by his own testimony, defendant would need to find an additional 20 acres of land to lease or use from other property owners in addition to the 150 acres he

---

[5] Defendant had suggested that the homestead and proposed 3 acre parcel would also provide an acceptable location for plaintiff to rebuild his ice cream plant. The Court has awarded that site, however, to defendant for the reasons provided in that section of this decision.

23

currently leases. It is difficult for the Court to accept his testimony that the need to lease an additional 20 acres of land would make it impossible for him to continue farming, although just as clearly, the Court accepts the fact that it would make it even more difficult.  Perhaps there were other reasons for defendant's view, but if so they were not sufficiently presented.

Finally, both parties agree that in order for defendant to be able to access that portion of his land to the west of the 30 acre conserved parcel after partition, he would need access from Silver Spring Lane. Part of the western portion of these 137 acres north of Silver Spring Lane is a parcel referred to as the "Big Rock" parcel consisting of 21 acres as shown on maps included with Mr. Scranton's stipulated appraisal. An additional approximate 39 acre parcel south of Silver Spring Lane makes up the Wilcox land which had been a part of the so-called "Old Bishop Farm".  Two of those 39 acres, according to the only information presented to the Court, but not disputed by defendant (Plaintiff's Post-Trial memorandum dated August 15, 2009 and filed August 18, 2009, p.6, FN.9) makes up the northeast corner of this parcel, but located to the east of the hedgerow and bounded on the north by Silver Spring Lane and to the east by neighboring land.  Evidence was introduced to raise a concern that the creation of an access road as proposed by plaintiff into defendant's parcel after division from Silver Spring Lane might create sight line difficulties and also be insufficient should defendant ever wish to use the land for a purpose other than its present purpose.

Plaintiff has proposed awarding defendant only a fifty foot wide strip of land running along the eastern boundary of the northeast 2 acre portion the "Old Bishop Farm" identified above from Silver Spring Land south to defendant's property awarded

24

in this order. Such an allocation as proposed might forever restrict the defendant to that size access. Further, as noted by defendant, creating the safest access for all travelers along Silver Spring Lane is a concern. Awarding this 2 acre parcel to the defendant, however, will avoid all of these issues, provide sufficient and protected access for defendant to the most valuable portion of his property regardless of future use and further allow for plaintiff's eastern boundary to consistently run north and south along the hedgerow which defines that boundary for the larger percentage of this parcel. Therefore, although exact measures are unavailable as neither party arranged for a pertinent survey, plaintiff will be awarded 37 acres of the remaining open and wooded farm land. The line shall run generally north-south along an existing hedgerow marking the line of the former border between the Bishop farm and Wilcox farm but at its most northerly point continue in the same direction along the hedgerow until it meets Silver Spring Road and not deviate to include the 2 acre portion in the northeast corner east of the hedgerow. That corner will be awarded to the defendant.

The eastern border of plaintiff's "open and wooded farm land parcel" shall then run along the easterly edge of the hedgerow. The line shall run from Silver Spring Lane southerly along the hedgerow until it meets the southern boundary of the parties' land. Since no survey was provided by either party prior to this decision, it is impossible for the Court to know whether the precise acreage intended to be awarded to each party is being accomplished. Consequently, the Court will include a method of addressing any gross errors due to the absence of a survey for any parcels the parties now survey in order to complete the property division ordered herein.

Finally, this award will provide that plaintiff receive a total of 58 acres of the open

25

and wooded farm land parcel (in addition to the 3 acre alternative plant site). He is entitled to the value of 65.62 acres of this remaining parcel. To allow for defendant to be able to maintain this additional acreage if he so desires and is able, and since neither party proposed a separate 7.62 acre parcel to meet this contingency, defendant will be provided an option of either paying to plaintiff an owelty of $53, 340 within one year of this order (see provisions of Order below) to make up the difference or designating an additional 7.62 acre parcel which shall be located in the southwest corner of the open and wooded farmland parcel to be awarded to the defendant configured so as to ensure access from the remainder of the open and wooded farm land parcel awarded to plaintiff. The parties may agree to a different location for that 7.62 acre parcel with an equivalent value, but both must agree. The Court's Order will provide for the logistics to accomplish this mandate.

## ORDER

A. Plaintiff, Howard Wilcox, is awarded the following property (references are to the parcels as identified in the appraisal of William Scranton or where not so identified, as otherwise provided herein):

1. The 2.8 acre commercial parcel located on the west side of US Route 7;

2. The forest and recreation land totaling 165 acres;

3. The 54 acre parcel of conserved land located on the east side of US Route 7A;

4. A 3 acre parcel located on the west side of Old US Route 7 (Wilcox Lane) and south of the farmhouse, located entirely on the west side of Wilcox Lane. The parcel shall be a rectangle having 449 feet of frontage on Wilcox Lane and a depth of 262 feet. The northeast corner of this parcel shall be located at a point on the westerly side of Wilcox Lane and south of the hedgerow found southerly of the farmhouse, which point shall be located 25 feet south of the hedgerow;

5. The "Big Rock" parcel located northerly of Silver Spring Lane consisting of 21 acres;

6. A parcel consisting of 37 acres of the remaining open and wooded farm land located southerly of Silver Spring Lane. It shall be bounded on the east by a line which runs along the eastern edge of a hedgerow running from the southerly boundary of the Wilcox property and northerly until it meets Silver Spring Lane. This line is the former boundary line of the "Old Bishop Farm", except for approximately 2 acres in the northeast corner of this parcel

27

bounded on the north by Silver Spring Lane, on the east by lands now or formerly owned by Childs and the west by the hedgerow. The hedgerow line shall divide defendant's property to the east from plaintiff's property to the west, which is located south of Silver Spring Lane and consists of a portion of the open and wooded farm land parcel identified by Mr. Scranton's appraisal. (The two acres bounded on the north by Silver Spring Lane, on the east by lands now or formerly owned by Childs and to the west by the hedgerow line that were a part of the "Historic Bishop Farm" described by plaintiff (See Plaintiff's Post-Trial memorandum dated August 15, 2009 and filed August 18, 2009, p.6, FN.9) will be awarded to the defendant so that defendant will be able to access his lands without concern for potential future access and other sight line issues raised by the evidence and so that plaintiff's eastern property line will run the length of the hedgerow which defines the eastern boundary of the property awarded to plaintiff for the parcel.)

B. Defendant, Gerald Wilcox, is awarded all remaining land on the property to be partitioned.

C. Plaintiff shall cause the 3 acre alternative plant site parcel awarded to him to be surveyed and will bear the expense of that survey.

D. Plaintiff shall bear the expense of a survey of the additional 7.62 acre parcel located in the southwest corner of defendant's portion of the open and wooded farm land should defendant notify plaintiff that this parcel will be transferred to plaintiff in lieu of paying the owelty of $53,340.

E. The parties shall jointly arrange for a survey and equally share in the cost of the

survey necessary to divide the open and wooded farm land along the hedgerow as ordered.

F. Defendant shall bear the cost of any survey necessary for the 2 acre parcel awarded to him identified above in the northeast corner of the so-called "Old Bishop Farm" which will provide him access to Silver Spring Lane.

G. As stipulated, all surveys required by this order shall be performed by Charles Rockwell, Site lines, Inc. of Dorset. Vermont. All surveys shall be complete as soon as possible but no later than 6 months from this order.

H. Defendant shall notify plaintiff's counsel no later than 45 days from the date of this order whether he will transfer the additional 7.62 acre parcel located in the southwest corner of defendant's portion of the open and wooded farm land or pay to plaintiff $53, 340.  Should he choose to transfer the property, plaintiff shall survey the property as ordered in paragraph D.  The option as to payment of this sum or transferring an additional parcel to plaintiff is for the defendant, but that decision must be made within 45 days of this order. Unless defendant notifies plaintiff (or plaintiff's counsel) in writing within those 45 days that he would choose to pay the owelty, the additional 7.62 acres shall be awarded to plaintiff. The parties may agree to a different location for that 7.62 acre parcel with an equivalent value of $53,340 calculated according to the per acre values contained in Mr. Scranton's appraisal, but both must agree. The parties must directly or through counsel meet to agree to the dimensions of this parcel within 30 days of defendant's decision to transfer the parcel. Should no agreement be reached, the parties shall submit the matter to binding arbitration, sharing the

29

cost equally and then apportion the property as so directed by the arbitrator. Arbitration on this issue shall be complete within 60 days of defendant's decision to transfer the parcel in lieu of the owelty provision. An appropriate quit claim deed shall be prepared and signed within the time periods and as set forth in this Order.

Should defendant choose to pay plaintiff $53, 340, he shall pay that amount in full no later than nine months from the date of this Order. Should he not pay that amount in full within 90 days of this order, he will then pay an additional amount equal to 5% per annum simple interest on the unpaid sum until paid in full. Plaintiff will have a judgment lien for that amount on the lands awarded to the defendant until the same has been paid in full.

I. The parties shall execute quit claim deeds transferring the parcels awarded in this Order as follows: Plaintiff shall prepare quit claim deeds transferring the parcels to defendant and defendant shall prepare quit claim deeds transferring parcels to plaintiff. Those deeds shall be prepared and executed no later than 30 days after completion of any surveys necessary to comply with this Order.

J. The preliminary injunction prohibiting capital improvements by either party ordered by the Court on May 26, 2006 will be lifted once all surveys are complete and quit claim deeds executed.

K. The Court has divided the property relying on descriptions and values per parcel as provided by the evidence. As noted above, the absence of surveys for each of the newly created parcels may result in inaccuracy. Generally, the parties are bound by their presentations and will not be heard to complain if the lack of

evidence is the cause of any such inaccuracy. Nevertheless, should substantial resulting error in calculations available to the Court lead to gross error with significant inequitable consequences to either party, some method of correction should be available to the parties without compromising the finality of this decision or unduly prolonging litigation. Therefore, the Court will order as follows: Since both parties have agreed that any and all necessary surveys will be conducted by Charles Rockwell, the following method will be used to correct gross (more than 1 acre) inaccuracies:

Once Mr. Rockwell completes all surveys for the parties necessitated by this Order, should the survey of any parcel as described by the Court yield an acreage calculation as determined by Mr. Rockwell after survey for that parcel which differs from the Court's acreage calculation for that parcel by more than 1 acre in either direction, no modification of parcel description or property allocation shall be made. However, the parties will calculate the value of the error to the nearest acre using the values provided by Mr. Scranton's stipulated appraisal report. The party in whose favor the error was committed shall pay to the other party half the value of that error in the same manner and within the same time period as provided for defendant's payment of the owelty set forth in Paragraph H of this Order. Should the parties disagree about any of these calculations, they shall submit the matter to binding arbitration. However, since the acreage calculation is to be performed by an individual both parties have accepted and the resulting calculations are a matter of simple mathematics, there should be little room for dispute.

L. Each party shall be responsible for their own costs of litigation including attorney fees.

Dated at Bennington this　　day of February 2010

_____　　　　　　　　　_____
Presiding Judge　　　　　　　　　　　　　　　Assistant Judge