# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Appeal of Aram K. Jerrehian, Jr. From the Decision Dated December 9, 2014 of the Zoning Hearing Board of the Township of Lower Merion Montgomery County, Pennsylvania | : : : : : : : | No. 409 C.D. 2016 |
| | : | |
| Appeal of: Aram K. Jerrehian, Jr. | : | |

| | | |
|---|---|---|
| In Re: Appeal of Jeffrey and Marsha Perelman From the Opinion and Order Dated December 9, 2014 of the Zoning Hearing Board of Lower Merion in the Matter of Jeffrey and Marsha Perelman Regarding the Preliminary Opinion Issued Pursuant to Section 155-105.1 of the Township Code Regarding 115 Cherry Lane, Wynnewood, PA | : : : : : : : : : : : : : | No. 417 C.D. 2016 |
| | : | |
| Appeal of: Jeffrey and Marsha Perelman | : : | |

| | | |
|---|---|---|
| In Re: Appeal of Aram K. Jerrehian, Jr. From the Decision Dated December 9, 2014 of the Zoning Hearing Board of the Township of Lower Merion, Montgomery County, Pennsylvania | : : : : : : : | No. 471 C.D. 2016 Argued: October 20, 2016 |
| | : | |
| Appeal of: Jeffrey and Marsha Perelman | : : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 6, 2017

Before this Court are the consolidated appeals[1] of Aram K. Jerrehian, Jr. (Jerrehian) and of Jeffrey and Marsha Perelman (the Perelmans), who challenge a land use order of the Court of Common Pleas of Montgomery County (trial court). The Perelmans challenge the trial court's holding that Jerrehian's lot had been created by a valid subdivision and had not merged into an adjacent lot. Jerrehian challenges the trial court's holding that he cannot build a house on the lot without a variance from the dimensional requirements for a buildable lot. In these holdings, the trial court affirmed the order of the Zoning Hearing Board of Lower Merion Township (Zoning Board) without taking additional evidence. We affirm in part and reverse in part.

## Background

Jerrehian owns a lot at 115 Cherry Lane that is located in the Township's RA Residence Zoning District. The lot consists of 3.8 acres in the approximate shape of a rectangle; it measures approximately 670 feet by 200 feet. Jerrehian Land Title Indenture, Reproduced Record at 161a (R.R. __). The lot's access to Cherry Lane is by a right-of-way over adjoining lots. Jerrehian's lot is unimproved, save for an abandoned in-ground swimming pool. The parties refer to Jerrehian's lot as the "Pool Lot."

In 2013, Jerrehian sought Lower Merion Township's (Township) approval to build a single-family house on the Pool Lot. Section 105.1 of Chapter

---

[1] Jerrehian appealed the trial court's order of February 12, 2016. The Perelmans filed both an appeal and a cross-appeal. By order of May 20, 2016, this Court consolidated the appeals.

155 of the Code of Lower Merion Township[2] authorizes a landowner to submit a proposed development plan to the Township Director of Building and Planning for a preliminary opinion on its compliance with the Township's zoning requirements. ZONING CODE §155-105.1. Where the preliminary opinion is favorable, a notice of this determination must be published in a local newspaper to allow objectors an opportunity to challenge the decision. The Township issued a favorable preliminary approval to Jerrehian, and the Perelmans, who own a lot at 101-H Cherry Lane, appealed to the Zoning Board.

The Perelmans asserted that the Pool Lot was not a valid lot created by a Township-approved subdivision plan. Further, it did not satisfy the minimum lot size requirements for a single-family home. After four days of hearings, the

---

[2] Section 105.1A-B of Chapter 155 of the CODE OF THE TOWNSHIP OF LOWER MERION, adopted July 21, 1993, by Ordinance No. 3328 (Zoning Code). Chapter 155 was originally adopted on March 16, 1927, by Ordinance No. 244, *as amended*, and states, in relevant part, as follows:

> A. *A landowner may submit plans and other materials describing a proposed use or development to the Director of Building and Planning for a preliminary opinion as to their compliance* with the provisions of this chapter. Such plans and other materials shall not be required to meet the standards prescribed for tentative, preliminary or final plan approval or for the issuance of a building permit, so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance.
> B. If the Director of Building and Planning's preliminary opinion is that the use or development complies with the provisions of this chapter, notice thereof shall be published each week for two successive weeks in a newspaper of general circulation in the Township. Such notice shall include a general description of the proposed use or development and its location, by some readily identifiable directive, and the place and times where the plans and other materials may be examined by the public. *Appeal from a favorable preliminary approval shall be to the Zoning Hearing Board*, the time therefor to run from the date when the second notice thereof has been published.

ZONING CODE §155-105.1A-B (emphasis added).

Zoning Board upheld the Perelmans' appeal without prejudice to Jerrehian's right to request a variance.

The Zoning Board made detailed findings of fact about the history of the Pool Lot and lots surrounding it. The Pool Lot began as part of a tract of land known as "Hedgeley" that was assembled in the 19th century by William Winsor through a series of land acquisitions. At the time of the adoption of the Township's first Zoning Ordinance in 1927, Hedgeley was a 40-acre tract. In 1958, following the death of William Winsor's heir, James Winsor, Hedgeley was divided into four parcels by the Orphans' Court; one parcel became the Pool Lot.

In 1961, the Township did a survey that included the four Hedgeley lots in its Lot Location Plan. That plan showed a 50-foot wide right-of-way extending to and across the Pool Lot from another right-of-way that ran from Cherry Lane. A 1968 Subdivision Plan, approved by the Township, also depicted this 50-foot right-of-way and showed that the Pool Lot had 110 feet of frontage on the right-of-way. All three plans described the right-of-way as 50 feet in width.

In 2003, Bert and Anne O'Malley purchased two of the Hedgeley lots: the Pool Lot (115 Cherry Lane) and 103 Cherry Lane. In 2005, the O'Malleys sold 103 Cherry Lane to Dwight Stollwerck, and in 2006, they sold the Pool Lot to Jerrehian.

The question before the Zoning Board was whether the Pool Lot, which is 3.8 acres, satisfied the dimensional requirements of the Zoning Code. Section 16A of the Zoning Code prescribes the minimum lot size and width as follows:

> Lot area and width. A lot area of not less than 45,000 square feet and *a lot width of not less than 90 feet at the street line* and extending from the street line to a point 25 feet beyond that point of the proposed building closest to the rear lot line shall

3

be provided for every building hereafter erected or used for any use permitted in this district.

ZONING CODE §155-16A (emphasis added) (amended February 18, 1987 by Ordinance No. 3034). Section 4 of the Zoning Code, which is the definition section, defines "street" as follows:

A right-of-way, publicly or privately owned, serving as a means of vehicular and pedestrian travel and furnishing access to abutting properties and space for sewers and public utilities.

ZONING CODE §155-4B (amended April 21, 1993 by Ordinance No. 3317). Section 4 defines "street line" as "[t]he line dividing a lot from a street." *Id.*

In their first issue, the Perelmans argued that the Pool Lot was not a valid lot, regardless of its dimensions. They contended that the Orphans' Court partition of Hedgeley into four lots, which created the Pool Lot, was not a valid subdivision under the Pennsylvania Municipalities Planning Code (MPC).[3]

The Zoning Board rejected this argument. First, it observed that the Orphans' Court partition of Hedgeley into four lots was done in 1959 before the MPC had been adopted. Second, it concluded that the Orphans' Court had the authority to partition Hedgeley into four parcels based on *In re Tettemer's Estate*, 26 Pa. D. & C. 3d 745 (1981), *affirmed without opinion*, 458 A.2d 287 (Pa. Super. 1983).

In *Tettemer's Estate*, heirs with interests in a 24-acre property petitioned the orphans' court to divide that property into five parts. The township objected, asserting that the property could only be divided by the township in accordance with its subdivision ordinance. The orphans' court rejected the

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

township's contention for the stated reason that the MPC did not define "subdivision" in a way that precluded an orphans' court from doing a land partition in the course of an estate settlement. Further, the township's subdivision ordinance governed only subdivisions done to effect a lease, transfer of ownership or to develop a lot. It did not govern the work of an orphans' court done to settle an estate. Therefore, the orphans' court's partition did not interfere with the subdivision ordinance.

Here, the Orphans' Court divided Hedgeley into four lots before the MPC was enacted. Therefore, the MPC's definition of "subdivision" is irrelevant. Further, the Township's former subdivision ordinance was substantially similar to the one at issue in *Tettemer's Estate*. The Zoning Board explained that Section 2 of the Former Lower Merion Subdivision Ordinance of 1948 defined "subdivision" as follows:

> the division of a single lot, tract, or parcel of land into two or more lots, tracts, or parcel[s] of land, including [ ] street lines or lot lines for the purpose, whether immediate [ ] of transfer of ownership or of building development.

R.R. 52a.[4] Thus, as in *Tettemer's Estate*, the Township's subdivision ordinance was silent on the issue of an orphans' court distribution.

Additionally, the Zoning Board found that the Orphans' Court partition of Hedgeley had been subsequently ratified by the Township. The Township reviewed the Orphans' Court subdivision of Hedgeley under the Township's Subdivision and Land Development Ordinance (SALDO).

---

[4] The photocopies in both the reproduced record and certified record are not clear. Brackets are used where the photocopy was illegible.

5

Accordingly, in 1961, the Township approved the Lot Location Plan, which included the Pool Lot.

The Zoning Board then turned to the Perelmans' claim that, even if the Pool Lot were a valid lot, it merged with the lot at 103 Cherry Lane in 2003, when both lots were purchased by the O'Malleys. The Zoning Board rejected this argument. A zoning ordinance can provide for a merger of lots where two adjoining lots are owned in common and, thereafter, zoning renders one of the lots nonconforming in size. *See In re Puleo*, 729 A.2d 654, 656 (Pa. Cmwlth. 1999).[5] It must be demonstrated that the owners intended the two lots to merge. The Zoning Board held that the Perelmans failed to meet their evidentiary burden of proving that the common owners, the O'Malleys, took any action from which it can be inferred that they intended to merge the Pool Lot and 103 Cherry Lane into one lot.

In sum, the Zoning Board held that the Pool Lot is a valid lot created by the Orphans' Court partition in 1959 and subsequently approved by the Township in its 1961 Lot Location Plan. It also held that the Pool Lot did not merge into the adjacent lot during the period of their brief common ownership.

The Zoning Board then turned to the Perelmans' contention that the Pool Lot does not satisfy the dimensional requirements for a residential lot set forth in Section 16A of the Zoning Code.[6] The Pool Lot, at 3.8 acres, greatly exceeds the minimum lot size of 45,000 square feet. However, it is also required to have a

---

[5] The Zoning Board did not point to a provision in the Zoning Code that provided for a merger of two lots when necessary to have a lot satisfy the dimensional requirements for a lot.

[6] As set forth *supra*, Section 16A requires a "lot area of not less than 45,000 square feet and *a lot width of not less than 90 feet at the street line*." ZONING CODE §155-16A (emphasis added).

90-foot lot width, which is measured "at the street line," not the lot lines. ZONING CODE §155-16A. The Township's 1968 Subdivision Plan showed that the Pool Lot had 110 feet of frontage on the right-of-way that provides the Pool Lot access to Cherry Lane. However, the Zoning Board held that this right-of-way was not a "street" within the meaning of the Zoning Ordinance but, at best, a paper street.[7] The Zoning Board held that a "street" must provide for public utilities and for vehicular traffic. An existing driveway lies within the right-of-way, on which vehicles can drive to the Pool Lot. However, trees obstruct passage in other parts of the right-of-way. Concluding that the Pool Lot did not have any frontage on a "street," the Zoning Board sustained the Perelmans' appeal that the Pool Lot did not satisfy the dimensional requirements needed to build a house. In doing so, it observed that Jerrehian may be eligible for a variance.

Both parties appealed to the trial court, which did not take additional evidence. The trial court affirmed the Zoning Board's decision in its entirety. It agreed with the Zoning Board that the right-of-way, on which the Pool Lot fronts, is not a street because it does not serve vehicular travel and does not contain sewers or public utilities. It also agreed with the Zoning Board that the Pool Lot was a separate lot and had not merged with 103 Cherry Lane.

Both parties have appealed to this Court.[8] Jerrehian argues that the Zoning Board erred in two ways. First, it erred because the right-of-way on which

---

[7] A "paper street" refers to a street listed on publicly recorded documents that has never been opened by the municipality or used by the public, *i.e.*, "it has no existence except on paper, and is therefore referred to as a 'paper street.'" *Bailey v. Zoning Board of Adjustment of the City of Philadelphia*, 780 A.2d 809, 813 n.5 (Pa. Cmwlth. 2001) (quotation omitted).

[8] Where the trial court takes no additional evidence, our review determines whether the Zoning Board committed an abuse of discretion or an error of law. *Sabatine v. Zoning Hearing Zoning Board of Washington Township,* 651 A.2d 649, 652 (Pa. Cmwlth. 1994) (quotation omitted). **(Footnote continued on the next page . . .)**

7

the Pool Lot has 110 feet of frontage is a "street" and, thus, the Pool Lot meets the dimensional requirements for a buildable lot. Second, in the alternative, the trial court erred because the Pool Lot meets the minimum lot width and front yard requirements of the 1951 Zoning Code, which was in effect when the Pool Lot was created in 1959 by the Orphans' Court. For their part, the Perelmans argue that the Zoning Board erred (1) in finding that a right-of-way to the Pool Lot even existed; (2) in finding that the Pool Lot had been created in a valid subdivision, and (3) in holding that the Pool Lot had not merged with 103 Cherry Lane.

## Jerrehian Appeal

We begin with Jerrehian's claim that the right-of-way qualifies as a "street" and, thus, the Pool Lot conforms to the lot width requirements in the Zoning Code. As noted, to build a house, the lot in question must have a "width of not less than 90 feet at the street line…." ZONING CODE §155-16A. Section 4 of the Zoning Code defines "street" as follows:

> A right-of-way, publicly or privately owned, serving as a means of vehicular and pedestrian travel and furnishing access to abutting properties as and space for sewers and utilities.

ZONING CODE §155-4B. Jerrehian claims the right-of-way, what he calls a "Proposed Road,"[9] meets the definition of a street and that the Zoning Board erred in concluding otherwise.

---

**(continued . . .)**
Our scope of review over a zoning board's findings of fact is deferential; they will be upheld if supported by substantial evidence of record. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). Our scope of review of legal questions is plenary, and our standard of review is *de novo*.

[9] Deeds of conveyance to the two lots north of the Pool Lot following the 1968 Subdivision Plan (which lots the Proposed Road burdens) describe the right-of-way in question as a "right of way **(Footnote continued on the next page . . .)**

8

Jerrehian notes the right-of-way is more than lines on a map. There is a road, or driveway, that has been used for years to connect the Pool Lot, and the other Hedgeley lots, to Cherry Lane. Both vehicles and pedestrians have long used it. This existing driveway is located within the 50-foot wide right-of-way established in the relevant deeds and subdivision plans. Jerrehian acknowledges that the right-of-way is not "tree free" along its entire length but contends that this does not mean it does not provide "a means" of vehicular travel. Further, he has the legal right to remove encroachments, such as trees, from the right-of-way. The right-of-way, which is 50 feet wide, has plenty of space for the installation of sewers or public utilities.[10]

The Perelmans respond that the right-of-way is only a driveway or, at best, a "paper street." Section 4 of the Zoning Code defines a "right-of-way" as "[l]and used or intended for use as a street, alley or crosswalk," and here the right-of-way is neither used nor intended to be a "street." ZONING CODE §155-4B. The Township contends that the right-of-way to the Pool Lot is not a "street" because it does not serve vehicular access nor provide, legally, for sewer and other utilities.

A zoning hearing board is charged with the interpretation and application of the zoning ordinance, and its interpretation is entitled to deference. *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999). Further, a zoning hearing board "has an obligation to construe the

---

**(continued . . .)**

for proposed road." R.R. 325a, 329a. The Proposed Road was depicted on three approved subdivision plans.

[10] Jerrehian notes that because the 1968 and 1972 Subdivision Plans provided for the extension of streets to the properties adjacent to the Pool Lot, this suggests that the Township believed that the Hedgeley lots met the 90-foot wide frontage requirement.

words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). Any doubt must be resolved in favor of the landowner. It is an abuse of discretion for a zoning board to construe the terms of an ordinance for the intended purpose of restricting a property's use. *Id.* In construing local zoning ordinances, this Court "relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner." *Id.*

In holding that the right-of-way that connects the Pool Lot to Cherry Lane is not a street, the Zoning Board drew on its own precedent. In *Appeal of Anthony R. Petito*, (Zoning Hearing Board of Lower Merion Township, No. 3656, filed April 12, 2001), *affirmed,* (C.C.P. Montgomery County, No 00-00914, filed May 6, 2002), a landowner claimed that a private driveway that contained a sewer lateral and gas line was a street. R.R. 257a-262a. The Zoning Board rejected this contention, noting that if it were true, then a four-foot long driveway could be considered a "street." Further, the easement establishing the driveway did not state that utilities could be placed in the driveway. In *Appeal of Beth David Reform Congregation*, (Zoning Hearing Board of Lower Merion Township, No. 4125, filed June 26, 2008), the Zoning Board agreed with the applicant that an unpaved lane that adjoined several lots was not a "street." R.R. 270a-282a. It accepted the applicant's argument that the lane did not allow for vehicular travel or have space for sewers and public utilities.

Jerrehian argues that these cases, which have little analysis or discussion, are distinguishable and cannot be reconciled with the actual language

10

of the Zoning Code.[11]  We turn, then, to the operative provisions of the Zoning Code.  As noted, it defines "street" as follows:

> *A right-of-way*, publicly or privately owned, *serving as a means of vehicular and pedestrian travel* and furnishing access to abutting properties and space for sewers and public utilities.

ZONING CODE §155-4B (emphasis added).  It defines "right-of-way" as "[l]and used or intended for use as a street, alley or crosswalk."  *Id.*

The Perelmans describe Jerrehian's argument as based on the "flawed syllogism" that all streets are rights-of-way, and all rights-of-way are streets. However, the syllogism is not one of Jerrehian's making but one produced by the drafters of the Zoning Code.  It defines "street" as, *inter alia*, a "right-of-way," and it defines "right-of-way" as, *inter alia*, a "street."  The Zoning Code does not state that a street must be paved with curbs, have lights and carry utilities.  In any case, the right-of-way, which is called a "Proposed Road" on the 1968 Subdivision Plan, was intended to be a street, as opposed to an alley or crosswalk.  In short, the definition of "right-of-way" adds nothing to a resolution of the question of whether the Pool Lot has the requisite lot width.

A "street," at least for purposes of measuring lot width, need not be paved and presently used by vehicles.  The presence of encroachments, *i.e.*, trees, is not insurmountable.  Jerrehian notes that the owner of the Pool Lot has the inherent right to improve the right-of-way with paving and to remove

---

[11] The Perelmans cite to *Dowgiel v. Reid*, 59 A.2d 115 (Pa. 1948).  However, that case addressed an easement that did not expressly allow for the installation of utilities.  Here, the right-of-way expressly authorizes the installation of utilities.

11

encroachments.[12]  To be a "street," it is enough for the right-of-way to serve "as a means of vehicular and pedestrian travel," and the 50-foot right-of-way provides this "means."  ZONING CODE §155-4B.

We also reject the Zoning Board's construction of "street" to mean that sewers and public utilities must actually be installed on the right-of-way.  The Zoning Code states only that a street must furnish "space for sewers and public utilities."  Indeed, the Township's Director of Building and Planning testified that many streets in the Township do not contain public sewers.  R.R. 428a.  It is enough that there be space for sewers and public utilities, and there is no evidence of record to show that a 50-foot right-of-way is not wide enough.[13]

---

[12] In *Croyle v. Dellape*, our Superior Court held that an easement over an unopened street created on a 1906 plan entitled the benefited owners to possess and use the entire 60-foot width.  832 A.2d 466, 471-72 (Pa. Super. 2003).  Accordingly, the property owners were compelled to remove encroachments in the unopened street, notwithstanding that the encroachments did not interfere with the current use.  *Id.* at 476.  Similarly, in *Kinzey v. Marolt*, 432 A.2d 234, 235-36 (Pa. Super. 1981), the Superior Court held that a 50-foot-wide easement over an unopened street shown on a 1941 plan could be opened and improved at any time.

We reject the Perelmans' assertion that we may not consider this line of argument of Jerrehian because it was not preserved.  Issues must be preserved, not arguments.  *Wert v. Department of Transportation*, *Bureau of Driver Licensing*, 821 A.2d 182, 186 n.9 (Pa. Cmwlth. 2003) (issues must be preserved at every stage of the litigation but "this does not mean every argument is written in stone at the initial stage of litigation … logic dictates that an appellant can raise new arguments so long as they relate to the same issue.").  Here, the issue, clearly preserved, is whether the width of the Pool Lot can be determined on the basis of its frontage on the right-of-way.

[13] Jerrehian contends that the owner of the Pool Lot has the right to install sewers and utilities in the right-of-way.  In *Dowgiel v. Reid*, 59 A.2d 115, 121 (Pa. 1948), the Pennsylvania Supreme Court concluded that the grant of a right-of-way for a "*private* road or cartway" absolutely includes the right to construct and install electric poles and to string wires on those poles for the purpose of providing power from the street to the benefited property.  The Supreme Court held that the installation of poles and wires

> is a reasonable and natural use of the private road for the purpose for which it was
> created, to wit, to enable the owners and occupants of the premises to which the

**(Footnote continued on the next page . . .)**

12

We reject the Zoning Board's strained interpretation of "street." The Zoning Board did not parse the actual language of the Zoning Code but, rather, resorted to its precedent, which was never appealed to this Court. By requiring the right-of-way to be free of encroachments and to have sewers and utilities installed, the Zoning Board veered from the actual words used in the Zoning Code. Any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Mt. Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville*, 458 A.2d 1043, 1045 (Pa. Cmwlth. 1983). This principle is grounded in Section 603.1 of the MPC, which provides that

> [i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. §10603.1.[14] A zoning board may not add requirements that are not firmly stated in the zoning ordinance, as the Zoning Board did here.

The lot dimensional requirements at issue here were designed for higher density residential developments than the neighborhood here. Each Hedgeley parcel is over two acres. The strict application of a 90-foot lot width

---

**(continued . . .)**
road is appurtenant to obtain which is essential to the liveableness of the home, to wit, electricity....

*Id.* at 121. In 2001, the Pennsylvania Superior Court recognized that the Supreme Court's reasoning in *Dowgiel* applied broadly to improvements that naturally and reasonably may be accommodated by a street right-of-way. *PARC Holdings, Inc. v. Killian*, 785 A.2d 106 (Pa. Super. 2001).

[14] Section 603.1 was added by the Act of December 21, 1988, P.L. 1329.

requirement to a 3.8-acre lot is illogical. More importantly, it is not consistent with the principle that a zoning ordinance must be construed in accordance with its actual words and in a way that is least restrictive of the landowner's property rights. Here, a "street" must provide the "means" for vehicular travel and furnish the "space" for sewers and public utilities. The right-of-way, on which the Pool Lot fronts, meets both these requirements.

## Perelmans' Appeal

In their first issue, the Perelmans claim that the Zoning Board erred in finding the right-of-way to the Pool Lot actually exists. The Perelmans note that the first mention of the right-of-way appears in the 1961 Lot Location Plan. However, it was not listed in subsequent deeds that transferred property burdened by the right-of-way. Accordingly, the right-of-way does not exist. Jerrehian responds that the right-of-way is listed in the 1961 Lot Location Plan and in the 1968 and 1972 Subdivision Plans, all of which were approved by the Township. A failure to disclose a right-of-way does not extinguish the right-of-way. *See Potis v. Coon*, 496 A.2d 1188, 1195 (Pa. Super. 1985) (right to private easement cannot be extinguished without owner's consent).

As noted by the Zoning Board, the history of the Pool Lot is complex. Instead of demonstrating why specific findings of the Zoning Board are not supported by substantial evidence, the Perelmans cherry-picked the record to find support for their position.[15] The question is whether the facts, as found by the

---

[15] Although the Perelmans state in a footnote that eight of the Zoning Board's findings are not supported by substantial evidence, they do not elaborate. Perelmans' Brief at 40 n.47.

Zoning Board, are supported by the record, not whether other facts could have been found had the Zoning Board weighed the evidence differently.

The Zoning Board's finding that a 50-foot right-of-way exists is well supported by the record. First, the Township approved the 1961 Lot Location Plan, which showed the courses and distances of the four lots, including the Pool Lot, established by the Orphans' Court. The 1961 Lot Location Plan showed the 50-foot right-of-way. Zoning Board Op. at 6, Finding of Fact No. 25. The Township's approved 1968 Subdivision Plan also included the 50-foot right-of-way to the Pool Lot, even though it was not mentioned in the 1968 Subdivision Plan. *Id.* at 8, Finding of Fact No. 34. Likewise, the Township's approved 1972 Subdivision Plan depicts a 50-foot right-of-way to the Pool Lot.[16] All of these findings are supported by the record evidence, and we reject the Perelmans' assertion that a right-of way to the Pool Lot does not exist.

In their second issue, the Perelmans argue that the Zoning Board erred in holding that the Pool Lot is a lawfully existing separate lot. They argue that the Pool Lot was not created by a valid subdivision, and *Tettemer's Estate*, 26 Pa. D.&C. 3d 745, is not dispositive. They contend that *Guido v. Township of Sandy*, 880 A.2d 1220 (Pa. 2005), dictates a different outcome.

In *Guido*, a property was "informally separated into two parcels by virtue of a 1982 lease" between a landowner and his tenant. *Id.* at 1221. The tenant operated a restaurant on one "informal" lot, and the landowner operated a store and gas station on the second "informal" lot. The lease gave the tenant the option to purchase its part of the property. Before the tenant could exercise this

---

[16] The Zoning Board noted that the exact dimensions of the right-of-way to the Pool Lot are not identical from 1961 through 1971.

15

option, the township adopted a zoning ordinance that required a minimum lot size of 45,000 square feet. The tenant's restaurant lot exceeded this minimum, but the landowner's lot fell short, at 33,259 square feet.

When the landowner refused to let the tenant exercise its option to purchase its lot, the tenant instituted suit against the landowner and simultaneously sought planning commission approval to make its "informal" lot a valid one. The trial court confirmed that the tenant's lot was created when the tenant obtained equitable title to the lot by a lease with an option to buy.

Our Supreme Court reversed. It held that when the tenant exercised its option to purchase, equitable title reverted back to the date the option was created, *i.e.*, June 16, 1982. Section 107 of the MPC defines "subdivision" as follows:

> [T]he division or redivision of a lot, tract or parcel of land *by any means* into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development….

53 P.S. §10107 (emphasis added). The Supreme Court rejected the trial court's construction of "by any means" as authorizing a subdivision by lease. Section 107 of the MPC establishes that once a municipality adopts a subdivision and land development ordinance, the SALDO provides the exclusive "means" for creating a subdivision. Had the tenant exercised the option prior to the township's adoption

16

of a SALDO in 1996, the two lots would have qualified as pre-existing non-conforming lots.[17]

Jerrehian and the Township argue that *Guido* is distinguishable because it did not involve the division of property by an orphans' court judge. In *Guido*, the Supreme Court's grant of allocatur was

> limited to determining whether a leasehold interest in a parcel of land coupled with an option to purchase such land creates a property interest in the lessee-optionee sufficient to support a legally recognized subdivision of the property either at the time the lease and option were simultaneously executed or when the purchase option was exercised.

*Guido*, 880 A.2d at 1221. Jerrehian and the Township contend that the issue decided by the Supreme Court in *Guido* is irrelevant to this case, which involved a partition by the Orphans' Court before the MPC was enacted. We agree.

Further, in 1961, the Township engineer reviewed the Hedgeley subdivision and approved it. In his review, the Township engineer examined the surveys done on the four lots created, one of which was the Pool Lot, in the estate distribution. The Township engineer certified that he compared the surveys with the descriptions set forth in the 1959 Orphans' Court distribution. Zoning Board Op. at 5, Finding of Fact No. 21. The Township engineer also reviewed the Lot

---

[17] The Supreme Court noted that Section 512.1(a) of the MPC provides a procedure to excuse failure to conform to an ordinance. It states:

> The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

53 P.S. §10512.1(a), added by Section 40 of the Act of December 21, 1988, P.L. 1329.

Location Plan prepared by an engineering company showing the four lots and the current owners. The Township Engineer approved the Lot Location Plan, which depicted the courses and distances of the four lots, including the Pool Lot. Zoning Board Op. at 6, Finding of Fact No. 24. The Zoning Board did not err in concluding that the Pool Lot is a valid and lawful lot.

In their final issue, the Perelmans argue that if the Pool Lot actually exists, then it merged with 103 Cherry Lane. The Perelmans presented evidence that the Pool Lot (115 Cherry Lane) and 103 Cherry Lane were used as a single lot by the O'Malleys from August 2003 through January 2005. They installed a circular driveway that used the common boundary line of the two lots. Further, the two lots were conveyed to the O'Malleys by a single deed in 2003.

"[T]he term 'merger' is used to describe the effect of *a zoning ordinance* on the adjoining lots held in common ownership." *Tinicum Township v. Jones*, 723 A.2d 1068, 1071 (Pa. Cmwlth. 1998) (citation omitted) (emphasis added). The doctrine of merger does not exist as a matter of common law; it is totally dependent on a merger provision in the relevant zoning ordinance. *Id*. Thus, the "focus of the inquiry is upon (1) when the properties in question came under common ownership and (2) *the effective date of the applicable zoning ordinance*." *In re Moyer*, 978 A.2d 405, 409 (Pa. Cmwlth. 2009) (quoting *Cottone v. Zoning Hearing Board of Polk Township*, 954 A.2d 1271, 1275 (Pa. Cmwlth. 2008) (emphasis added)).

The only evidence of merger offered by the Perelmans was that the O'Malleys used the right-of-way on the Pool Lot to access their house on 103 Cherry Lane. "It is well established that mere common ownership of [] adjoining lots does not automatically establish a physical merger of those lots for the purpose

of determining whether those lots comply with the zoning requirements." *Tinicum Township,* 723 A.2d at 1071 (citation omitted). "The burden is placed upon the party who asserts a physical merger to establish the landowner's intent to integrate the adjoining lots into one large parcel." *Appeal of Gregor*, 627 A.2d 308, 311 (Pa. Cmwlth. 1993). The proof required "must be grounded upon some overt, unequivocal, physical manifestation of this intent…." *Township of Middletown v. Middletown Township Zoning Hearing Board*, 548 A.2d 1297, 1299 (Pa. Cmwlth. 1988).

The Zoning Board observed that the O'Malleys took title to the property by a single deed, but that deed separately described each lot. Each lot has a separate tax parcel number. The O'Malleys then sold 103 Cherry Lane in 2005 and they sold the Pool Lot to Jerrehian in 2006. The only overt act of common use was the O'Malley's use of a circular driveway that crossed over part of the Pool Lot. The Perelmans claim this showed an intent to merge the lots. The Zoning Board held that O'Malley's "use of a driveway in the easement area" did not satisfy the Perelmans' heavy burden of proof. Zoning Board Op. at 18. This occasional use did not nullify the other evidence showing that the lots were treated as separate. We agree.

The short-lived and casual use of the Pool Lot for a turnaround does not constitute an overt, unequivocal, physical manifestation by the O'Malleys to merge 103 and 115 Cherry Lane. More importantly, merger is not a matter of common law. For the doctrine to be invoked, here must be a provision in the zoning ordinance that requires a merger of two lots, in common ownership, when a zoning ordinance amendment makes one of the lots non-conforming in size. If the

19

Zoning Code at issue here has a merger provision, it is a well-kept secret. In any case, the Perelmans have not shown that the provision applied here.

## Conclusion

For the above-stated reasons, the Court sustains the appeal of Jerrehian and rejects the appeal of the Perelmans.

_____

MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Aram K. Jerrehian, : 
Jr. From the Decision Dated :
December 9, 2014 of the Zoning :
Hearing Board of the Township of :
Lower Merion Montgomery County, :   No. 409 C.D. 2016
Pennsylvania :
  :
Appeal of: Aram K. Jerrehian, Jr. :

In Re: Appeal of Jeffrey and Marsha :
Perelman From the Opinion and :
Order Dated December 9, 2014 of :
the Zoning Hearing Board of Lower :
Merion in the Matter of Jeffrey and :
Marsha Perelman Regarding the :   No. 417 C.D. 2016
Preliminary Opinion Issued Pursuant :
to Section 155-105.1 of the :
Township Code Regarding 115 :
Cherry Lane, Wynnewood, PA :
  :
Appeal of: Jeffrey and Marsha :
Perelman :

In Re: Appeal of Aram K. Jerrehian, :
Jr. From the Decision Dated :
December 9, 2014 of the Zoning :
Hearing Board of the Township of :
Lower Merion, Montgomery County, :   No. 471 C.D. 2016
Pennsylvania :
  :
Appeal of: Jeffrey and Marsha :
Perelman :

## **O R D E R**

AND NOW, this 6th day of March, 2017, the order of the Court of Common Pleas of Montgomery County, dated February 12, 2016, in the above-captioned matter is AFFIRMED in part and REVERSED in part.

_____
MARY HANNAH LEAVITT, President Judge