J-A13040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TERENCE ODEN, MARYLINN MAIONE, AND NAN MCDERMOTT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEROME M. SCHMITT, MOHINI M. WAGLE-SCHMITT, AND ALLEGHENY COUNTY | : | No. 1073 WDA 2023 |
| | : | |
| APPEAL OF: JEROME M. SCHMITT AND MOHINI M. WAGLE-SCHMITT | : | |

Appeal from the Judgment Entered October 17, 2023
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-21-001073

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: JULY 23, 2024**

Appellants, Jerome M. Schmitt and Mohini M. Wagle-Schmitt ("the Schmitts"), appeal from the trial court's October 17, 2023 judgment following a non-jury trial. We affirm.

This case arises from a dispute between neighbors living in the Highland Park neighborhood of Pittsburgh. In 1989, the Schmitts purchased a residence on Wellesley Road. Stipulation of the Parties, 5/22/23, at 2. Their property abuts a portion of Wellesley Avenue that, as residential development occurred

in Highland Park in the 1920s, had been dedicated as a public road, but was never constructed. *See* Trial Court Opinion ("TCO"), 11/3/23, at 1, 3.[1]

Appellees — Terrence Oden, Marylinn Maione, and Nan McDermott — live on nearby Jackson Street. *Id.* at 1. Mr. Oden purchased his property in 2006, Ms. Maione purchased her property in 1994, and Ms. McDermott purchased her property in 1988. Stipulation of the Parties at 1-2. Because their front yards are comprised of a steep hill, Appellees have no vehicular access from Jackson Street to their residences. TCO at 1. Instead, they use the unconstructed portion of Wellesley Avenue for vehicular access to the rear of their properties. *Id.*[2]

Around 2007, a dispute began between the Schmitts and Appellees. *Id.* Appellees believed that the Schmitts were obstructing Appellees' access to the rear of their homes. *Id.* The Schmitts, however, claimed that they owned the half of the unconstructed portion of Wellesley Avenue abutting their land under the applicable law. *Id.* at 1-2. Based on this claim, in November 2019, the Schmitts recorded a deed from themselves to themselves, with a metes and bounds description from a survey of that area. *Id.* at 2. Allegheny County's Department of Real Estate designated this area as block and lot 124-A-229, and thereafter issued tax bills to the Schmitts for the land. *Id.* This

---

[1] Other parts of Wellesley Avenue have been constructed. *See* TCO at 1.

[2] The unconstructed portion of Wellesley Avenue is in a northerly direction from Appellees' properties. *See generally* TCO at 4-5, 6-7.

- 2 -

parcel is located to the north of the Schmitts' residence. **See** Schmitts' Brief at 8; Appellees' Brief at 7.

In February 2021, Appellees filed a complaint against the Schmitts and Allegheny County. Appellees raised an ejectment claim against the Schmitts, alleging, *inter alia*, that Appellees have a right of unobstructed access to the right-of-way located at the rear of their residences, and that unlawful encroachments by the Schmitts are harming Appellees' access. In addition, they brought a declaratory judgment/mandamus claim against the Schmitts and Allegheny County, requesting a declaratory judgment that the transfer of parcel number 124-A-229 to the Schmitts is void and unenforceable and that a writ of mandamus be issued ordering Allegheny County to eliminate and remove parcel number 124-A-229.

The case proceeded to a non-jury trial on May 19, 2023. Following trial, the trial court issued the following non-jury verdict:

> 1. As to Count I, Ejectment, in favor of [Appellees] and against [the Schmitts] as follows:
>
> > a. [Appellees] own a right-of-way shown on the City of Pittsburgh Department of Public Works drawing admitted during … trial as [E]xhibit 42[3];

---

[3] As we discuss *infra*, the trial exhibits were not transmitted to this Court. However, we believe that the Pittsburgh Department of Public Works drawing — admitted as Exhibit 42 at trial — was attached as Exhibit A to Appellees' response in opposition to the Schmitts' summary judgment motion and appears as follows:
*(Footnote Continued Next Page)*

J-A13040-24



- 4 -

b. Encroachments obstruct [Appellees'] right-of-way, that also extend beyond the boundaries of block and lot 124-A-229, consisting of what was described during the trial as a fence, concrete outside the fence[,] and a semi-circular shaped mound of dirt;

c. Within 30 days[,] [the Schmitts] shall, at their expense, remove all encroachments in a workmanlike manner to, at least, confine them to the boundaries of block and lot 124-A-229;

2. As to Count II, Declaratory Judgment/Mandamus, in favor of Allegheny County.

Non-Jury Verdict, 7/10/23, at 1-2 (unnumbered).

The Schmitts filed a timely post-trial motion. On August 11, 2023, the trial court entered an order, which stated, "[e]xcept as set forth below, the motions for post-trial relief filed by [the] Schmitt[s] are denied[,]" and that its earlier non-jury verdict "remains in full force and effect, with these additions: a. [t]he Schmitt[s] are the lawful owners of block and lot 124-A-229; b. [t]he Schmitt[s] have an additional 90 days to remove all encroachments; and c. I find in favor of the Schmitt[s] as to Count II, Declaratory Judgment/Mandamus." Trial Court Order, 8/11/23.

On September 8, 2023, the Schmitts filed a notice of appeal, in which they purported to appeal from the trial court's August 11, 2023 order.[4, 5] The trial court ordered the Schmitts to file a Pa.R.A.P. 1925(b) concise statement, and they timely complied. The trial court then issued a Rule 1925(a) opinion.

The Schmitts raise the following issues for our review:

1. Are [Appellees] mere trespassers on the vacant lot located to the north of their properties?

2. Do [Appellees] have standing to sue?

3. Do [Appellees] have the standing to complain of the alleged encroachment of[ the] Schmitts into the vacant lot?

4. Did [Appellees] establish that the right that they claim to use the vacant lot has been created in writing as is required by the Statute of Frauds?

5. Is the alleged incursion onto the vacant lot to the north of [the Schmitts'] property by the erection of a retaining wall and fence a *de minimus* encroachment?

---

[4] "Orders denying post-trial motions are interlocutory and not ordinarily appealable. The subsequent judgment is the final, appealable order." ***Becker v. M.S. Reilly, Inc.***, 123 A.3d 776, 777 n.1 (Pa. Super. 2015) (citation omitted). This Court has stated that, "even though [an] appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment." ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 513 (Pa. Super. 1995) (citations omitted). Here, the docket reflects that judgment was entered on October 17, 2023.

[5] Appellees also filed a notice of appeal, which was docketed at 1303 WDA 2023. However, this Court dismissed Appellees' appeal *sua sponte* on February 9, 2024, due to Appellees' failure to file post-trial motions. ***See D.L. Forrey & Associates, Inc. v. Fuel City Truck Stop, Inc.***, 71 A.3d 915, 919 (Pa. Super. 2013) (determining that, where an appellant did not file any post-trial motions, the appellant's claims of error are waived).

Schmitts' Brief at 6.[6]

At the outset, we admonish the Schmitts for their inattention to the reproduced and certified records in this matter. First, they failed to file a reproduced record. "Compliance with our Rules of Appellate Procedure regarding the filing of reproduced records is mandatory, and this Court will quash an appeal where the violations substantially impede the appellate process." **Clark v. Peugh**, 257 A.3d 1260, 1264 n.1 (Pa. Super. 2021) (citations omitted); **see also** Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be

_____

[6] We have re-ordered the issues for ease of disposition. We note that, under the section of the Schmitts' brief titled Statement of the Scope and Standard of Review, they list additional questions for our review. **See** Schmitts' Brief at 5. We decline to address these questions to the extent they are not included in their Statement of Questions Involved section of their brief and developed in their argument. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (citations omitted).

quashed or dismissed."); Pa.R.A.P. 2188 ("If an appellant fails to file his designation of reproduced record, brief or any required reproduced record within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the matter.").[7]

Second, and more critically, the Schmitts did not ensure that the certified record contained the trial exhibits. "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." ***Commonwealth v. Shreffler***, 249 A.3d 575, 584 (Pa. Super. 2021) (citation omitted). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (citation omitted). ***See also*** Explanatory Comment (2004) to Pa.R.A.P. 1931 ("In order to facilitate counsel's ability to monitor the contents of the original

_____

[7] Prior to the dismissal of Appellees' appeal at 1303 WDA 2023, this Court consolidated the Schmitts' appeal with Appellees' appeal. Nevertheless, in the consolidation order, this Court designated the Schmitts as Appellants/Cross-Appellees, and directed that "[t]he reproduced record shall be filed in compliance with Pa.R.A.P. 2186." ***See*** Superior Court Order, 12/8/23, at 2 (unnumbered); ***see also*** Pa.R.A.P. 2186 (stating, *inter alia*, that the reproduced record shall be served and filed not later than the date of service of the appellant's brief). In addition, the record does not indicate that the Schmitts were otherwise excused from filing a reproduced record. ***See*** Pa.R.A.P. 2151 (addressing circumstances when a party is not required to file a reproduced record).

record which is transmitted from the trial court to the appellate court, [Pa.R.A.P. 1931(d)] requires that a copy of the list of record documents be mailed to all counsel of record, or to the parties themselves if unrepresented, and that the giving of such notice be noted on the record. Thereafter, in the event that counsel discovers that anything material to either party has been omitted from the certified record, such omission can be corrected pursuant to Pa.R.A.P. 1926.").[8]

Despite these deficiencies, we address the Schmitts' issues with the record before us. Our scope and standard of review is

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

As with all questions of law, our review is plenary.

***Beckwith Machinery Co. v. National Union Fire Ins. Co. of Pittsburgh***,

890 A.2d 403, 405-06 (Pa. Super. 2005) (cleaned up).

*First Issue*

---

[8] Though it is the appellant's responsibility to ensure the record is complete, we made an informal inquiry with the trial court regarding the missing trial exhibits. Unfortunately, they were not available.

In the Schmitts' first issue, they argue that the owners of the vacant lot to the north of Appellees' properties never gave Appellees a right-of-way extending from Ms. Maione's property to Wellesley Avenue as it presently exists. Schmitts' Brief at 14. As such, the Schmitts contend that Appellees are trespassers. *Id.* at 15.

No relief is due. The trial court determined that a prescriptive easement provided Appellees with the right and privilege to enter the vacant lot to the north of their properties. TCO at 7.[9] It ascertained that Appellees have "a

---

[9] It is unclear to this Court who owns the land on which the prescriptive easement found by the trial court runs. However, we emphasize that Appellees brought an **ejectment** action against the Schmitts to challenge the Schmitts' encroachments upon the right-of-way. *See Croyle v. Dellape*, 832 A.2d 466, 471 (Pa. Super. 2003) ("An action in ejectment may be brought where the property interest claimed to be encroached upon is an easement or right[-]of[-]way.") (citation omitted). This Court has explained that ejectment

> has historically been a vehicle for asserting possession of property, as opposed to adjudicating ownership interests. *See Soffer v. Beech*, 409 A.2d 337, 341 (Pa. 1979) ("The writ of ejectment has long been the general method for obtaining **possession** of real property." (emphasis added)). This Court defines ejectment as "an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession." *Billig v. Skvarla*, 853 A.2d 1042, 1049 (Pa. Super. 2004). Thus, "the only necessary or indispensable party to an ejectment action is the person in actual possession of the land[.]" *Bannard v. New York State Nat. Gas. Corp.*, 172 A.2d 306, 310 (Pa. 1961); *see also Robb v. Weida*, 276 A.3d 259 (Pa. Super. 2022) (non-precedential decision at 3) (same).

> Since an ejectment action does not implicate or concern an adjudication of ownership or title, there is no requirement that all

*(Footnote Continued Next Page)*

- 10 -

right-of-way from the improved portion of Wellesley Avenue to the rear of their Jackson Street properties" because Appellees "established an easement by prescription over the Wellesley Avenue 'paper street.'" *Id.* at 2, 4-5.[10]

> This Court has explained:
>
> An easement or right-of-way by prescription arises by adverse, open, continuous, notorious, and uninterrupted use of the land for twenty-one years. Moreover,
>
> > [i]n establishing a prescriptive easement, constant use need not be demonstrated in order to establish the continuity of the use. Rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right.

*Matakitis v. Woodmansee*, 667 A.2d 228, 231 (Pa. Super. 1995) (cleaned up).

---

> potential owners of a property be joined as indispensable parties to such proceedings.[9] *Id.*
>
> > [9] Concomitantly, our precedent provides that "all parties who claimed title to the property at issue must be joined as indispensable parties" in a quiet title action. *Orman v. Mortgage I.T.*, 118 A.3d 403, 406-07 (Pa. Super. 2015).

*In re Estate of Smith*, 2023 WL 2622110, at *4 (Pa. Super. Mar. 24, 2023) (unpublished non-precedential memorandum; footnote omitted); *see also* Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

[10] "A 'paper street' refers to a street listed on publicly recorded documents that has never been opened by the municipality or used by the public, *i.e.*, 'it has no existence except on paper, and is therefore referred to as a 'paper street.'" *In re Jerrehian*, 155 A.3d 674, 680 n.7 (Pa. Cmwlth. 2017) (citation omitted).

Here, in finding a prescriptive easement, the trial court weighed that there is a deed from 1930 in Mr. Oden's chain of title that states that there is a right-of-way "for the use and benefit of the property herein described and the two adjoining properties, for the purpose of ingress, egress and regress to and from Wellesley Avenue." TCO at 6 (citing Stipulation of the Parties at 3). The trial court also considered that there is a 1956 survey of Mr. Oden's property "which designates a '12' Right of Way to Wellesley Ave' and shows a garage near it on the adjacent lot now owned by [Ms.] Maione." *Id.* at 6-7 (citing Exhibit 17 and N.T., 5/19/23, at 186).[11] The trial court noted that the existence of a garage by 1956 is circumstantial evidence that the right-of-way was historically used by motor vehicles. *Id.* at 7 n.3. In addition, the trial court credited Mr. Oden's testimony that his predecessor in title used the at-issue right-of-way for pedestrian access, as well as Mr. Schmitt's own testimony that Ms. Maione's children used the pathway. *Id.* at 7 (citing N.T. at 71, 210).[12] The trial court pointed out that Mr. Oden also testified about his observations of an existing pathway or roadway. *Id.* (citing N.T. at 49-

---

[11] Ms. Maione testified that there was previously a garage at the rear of her property. N.T. at 186.

[12] Mr. Oden testified that he expected the person he bought his property from was at least using the driveway "from a pedestrian side" to get to Wellesley Avenue. N.T. at 71. Mr. Schmitt said that Ms. Maione's kids "used to come up and down that pathway and they used to call it 'a secret passage.'" *Id.* at 210.

- 12 -

51, 53, 85).[13] Based on the foregoing, the trial court concluded that the evidence "demonstrates the continuity, since the year 1930, of the prescriptive easement…." *Id.*

In response to the trial court's reasoning, the Schmitts criticize the trial court's reliance on the wording of the deed, asserting, "[t]here is no question that there is a right-of-way across the rear[,] westerly end[] of [Appellees'] properties. But, there is a major hitch — the right-of-way does not extend to Wellesley Avenue." Schmitts' Brief at 14. The Schmitts argue "[w]hoever created the right-of-way which is found in the deeds []to the three [Appellees] never created a right-of-way across the vacant lot." *Id.* They also insist that a small amount of pedestrian traffic does not give rise to a right-of-way, and even if it did, "[p]edestrian use of the property does not give rise to the right to use the property for vehicular ingress, egress and regress." *Id.* With respect to the garage cited by the trial court, the Schmitts claim that the precise location of the driveway that serviced the garage is unknown and may have been under the property known as lot 124-A-299, in which case they say it was abandoned many years ago. *Id.* at 14-15.

Upon considering the arguments advanced by the Schmitts and applying our standard of review, no relief is due. Regarding the 1930 deed, even if the

---

[13] Mr. Oden testified that, when he moved in, the pathway had been neglected. N.T. at 49-50. He said he spent some time cleaning the pathway that was there, *id.*, and that he and Ms. Maione were "restoring" the road. *Id.* at 50. *See also id.* at 85 (Mr. Oden's stating that he was "restoring the roadway"). To make it accessible, Mr. Oden stated that he and Ms. Maione put in a gravel road. *Id.* at 50.

deed only establishes a right-of-way behind Appellees' residences, as the Schmitts contend, it nevertheless shows that Appellees' predecessors in title likely used the prescriptive easement to access the rear of their properties, where they had the deeded right-of-way, from the improved portion of Wellesley Avenue. As for pedestrian use, the Schmitts do not cite to the record to support and develop their claim that there was only a small amount of pedestrian traffic, **see Hardy**, **supra**,[14] and the fact that Mr. Oden observed an existing pathway suggests that more than a small number of pedestrians used it. **See Beckwith Machinery Co.**, **supra** (stating that all evidence and proper inferences favorable to the verdict winner must be taken as true and all unfavorable inferences rejected). The Schmitts also provide no legal authority to substantiate their assertions that a small amount of pedestrian traffic would not give rise to a right-of-way or the right to use the right-of-way for vehicular access. **Hardy**, **supra**.[15] Finally, with respect to the garage, when viewing the evidence in the light most favorable to Appellees as the verdict winner, **see Beckwith Machinery Co.**, **supra**, it is reasonable to infer that the driveway to the garage was on the existing pathway that Mr. Oden

---

[14] The Schmitts do not cite the trial transcript anywhere in their brief.

[15] The Schmitts do not cite or discuss legal authority pertaining to prescriptive easements in their argument. **See Coulter v. Ramsden**, 94 A.3d 1080, 1089 (Pa. Super. 2014) ("[M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (cleaned up).

observed, instead of under lot 124-A-299. Thus, the Schmitts' first issue does not warrant relief.[16]

*Second and Third Issue*

We address the Schmitts' second and third issues together, as they both challenge Appellees' standing to sue. While their argument is far from clear, the Schmitts appear to contend that Appellees were never granted a right-of-way across the vacant lot, and that the trial court improperly created a right-of-way for Appellees. Schmitts' Brief at 16-17. The Schmitts seem to suggest that, because Appellees have no interest, they are not aggrieved and cannot sue the Schmitts. *Id.* at 11-12, 16-17.

No relief is due. Initially, we have already determined — based on the Schmitts' arguments — that the trial court did not err or abuse its discretion in finding that Appellees have a prescriptive easement. As such, the basis for the Schmitts' standing argument — *i.e.*, that Appellees have no interest —

_____

[16] To the extent the Schmitts raise additional reasons in their reply brief as to why the trial court's decision was improper, we deem them waived as "a reply brief cannot be a vehicle to argue issues raised but inadequately developed in [an ]appellant's original brief." **Commonwealth v. Fahy**, 737 A.2d 214, 218 n.8 (Pa. 1999) (citations omitted). Nevertheless, even if not waived on that basis, the Schmitts' argument that Ms. Maione and Ms. McDermott did not use the right-of-way prior to Mr. Oden's building the driveway would not merit relief. Schmitts' Reply Brief at 5-6. As set forth above, the 1930 deed, the testimony of pedestrian use, the prior garage, and Mr. Oden's testimony about the existing pathway support the trial court's finding that the right-of-way was used prior to Mr. Oden's building the driveway. **See Beckwith Machinery Co.**, **supra**. Further, the Schmitts proffer no developed argument as to why the lack of use by Ms. Maione and Ms. McDermott renders the trial court's decision improper. **See Coulter**, **supra**; **Hardy**, **supra**.

- 15 -

fails. Further, because of its prescriptive easement finding, the trial court explained that Appellees have an interest in removing encroachments that significantly interfere with their right-of-way. TCO at 7 (citing **Big Bass Lake Community Ass'n v. Warren**, 950 A.2d 1137, 1147 (Pa. Cmwlth. 2008)). The Schmitts do not address this rationale, and we decline to craft an argument for them. **See Hardy**, 918 A.2d at 771 ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citation omitted).

*Fourth Issue*

In the Schmitts' fourth issue, they argue that Appellees failed to comply with the Statute of Frauds. Schmitts' Brief at 15. They claim that, "[t]o comply with the requirements of the Statute of Frauds, it would be necessary for [Appellees] to present something, in writing, granting them an easement or right-of-way over the vacant lots. They did not do so." **Id.**

This claim is unavailing. To begin, the Schmitts provide no legal authority to support their argument aside from a general cite to the statute in an earlier part of their brief. **See** Schmitts' Brief at 14; **but see id.** at 15. Thus, this issue is waived. **Coulter**, **supra**; **Hardy**, **supra**. Moreover, even if not waived for lack of development, this issue is also waived because the Schmitts failed to properly raise the Statute-of-Frauds claim in their post-trial motion. **Sovereign Bank v. Valentino**, 914 A.2d 415, 426 (Pa. Super. 2006)

- 16 -

(recognizing an issue is waived if it has not been raised in a post-trial motion) (citations omitted).[17]

Even if not waived, no relief is due. "The purpose of the Statute of Frauds is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest." **Burns v. Baumgardner**, 449 A.2d 590, 594 (Pa. Super. 1982) (citation omitted); **see also** 33 P.S. § 1. As the trial court discerned, however, the Statute of Frauds does not apply to an easement by prescription. **See** TCO at 11. **See also McNaughton Properties, LP v. Barr**, 981 A.2d 222, 225 n.2 (Pa. Super. 2009) ("[A] prescriptive easement differs markedly from an express grant easement, because the prescriptive easement is not fixed by agreement between the parties or their predecessors in interest.") (cleaned up); **Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.**, 761 A.2d 139, 142 (Pa. Super. 2000) ("An easement may be created by express agreement in compliance with the Statute of Frauds, or by implication, necessity, or prescription."). As such, the Schmitts' fourth issue warrants no relief.

*Fifth Issue*

---

[17] In the Schmitts' reply brief, they purport to have preserved this issue in their post-trial motion by arguing "[Appellees] totally failed to provide any evidence as to the ownership of a vacant lot[ to the] north of the Maione property. … [Appellees] entirely fail to provide any proof that they had any legal authorization to enter into the vacant lot to the north of the Maione property." Schmitts' Reply Brief at 7. These vague assertions are insufficient to preserve the Schmitts' Statute-of-Frauds issue.

In the Schmitts' fifth issue, they ask us to consider whether the encroachments, consisting of namely their fence and a foundation wall, are *de minimus*. Schmitts' Brief at 15.[18] They argue:

> At this point, the vacant lot extends from the northerly side of the Schmitt property 25 feet to the north. If [Appellees] believe that the driveway built by Mr. Oden is of insufficient width for them to drive comfortably, they have another 15 feet to the north where they can widen the driveway. Mr. Oden testified he is reluctant to do that, because the expense of removing a tree would be incurred. He is concerned about the expense to him, but is not concerned about the expense to the Schmitts of rebuilding a foundation wall and fence.

> A very large tree trimming truck, much larger than the average sedan, traversed the right-of-way with no problem. **See** Trial Exhibit 27.

> The complaint that [Appellees] have had difficulty driving through the "tight fit" is entitled to little credence, because [Appellees] have been successfully navigating for the last five years.

*Id.* at 16.

The Schmitts are not entitled to relief. The trial court observed that Appellees provided extensive, credible testimony about how the encroachments significantly interfered with their right-of-way. TCO at 9 (citing N.T. at 53-55, 60-64, 68-70, 173-77, 181-82).[19] It found that the

---

[18] In their reply brief, the Schmitts represent that they have removed the mound of dirt. Schmitts' Reply Brief at 2.

[19] Mr. Oden addressed the Schmitts' fence, explaining, "[d]ue to the narrow nature…, that fence is problematic, whether it is a matter of hitting the fence, if it is a matter of scraping vehicles along that fence, it is a problem." N.T. at 63. He said "[i]t does not allow for passage of … one vehicle, two vehicles, a large vehicle, or people walking through in a pedestrian manner." **Id.** at 64. *(Footnote Continued Next Page)*

encroachments result solely from the Schmitts' conduct. *Id.* The trial court determined that the Schmitts placed the fence beyond the boundary of lot 124-A-229 to accommodate the enlargement of their side yard. *Id.* at 9-10 (citing N.T. at 186-87).[20] In addition, the trial court noted that "there was no evidence that removal of the encroachments would cost the Schmitts 'tens of thousands of dollars' or that [Appellees] just need to spend 'a few dollars to take down a tree.'" *Id.* at 10. It credited Mr. Oden's testimony that "permits, dirt fill, a retaining wall and the removal of trees will be required by the topography for the work the Schmitts suggest [Appellees] do." *Id.* (citing N.T. at 94-97).[21] As for the tree trimming truck, the trial court — citing Exhibit

_____

Ms. McDermott also stated that she finds it "challenging to get around that bend, either going in or coming out." *Id.* at 175. *See also* N.T. at 208 (Mr. Schmitt's admitting "[i]t is a tight fit, especially when you go around that mound").

[20] Ms. Maione testified that the Schmitts installed their fence "in the mid-2000's, early 2000's." N.T. at 186. She suggested that, before the fence was installed, the Schmitts' "side yard was not as big as it is now." *Id.* She also testified that there was concrete inside the fence that the Schmitts moved outside of the fence. *Id.* at 186-87. *See also id.* at 216 (Mr. Schmitt's agreeing that the fence extends beyond the border of lot 124-A-229).

[21] Mr. Oden — an architect — stated that "[t]here are other parameters in widening the road, in essence, whether it is trees, the slope of the land. So those all need to be thoughtfully considered." N.T. at 97. When asked if he could widen the driveway by filling in lower areas beside the driveway that were about three or four feet deep, Mr. Oden answered that he has not "looked at it, other than once you start exceeding three, four feet, you need permits and retaining wall work done at that point." *Id.* at 95. *See also id.* at 212 (Mr. Schmitt's acknowledging, when asked if it would be difficult to make the lane wider, that Appellees "would probably need to have some trees removed,
*(Footnote Continued Next Page)*

27 — stated that the tree removal truck "is not 'huge[,'] and there was credible testimony that this access, as well as contractor operations, are made very difficult by the narrowness of the right-of-way…." *Id.* (citing N.T. at 64-66, 173-74).[22] While we do not have access to the trial exhibits, including Exhibit 27, the trial transcript supports the trial court's findings and its conclusion that the encroachments are not *de minimus*. **Beckwith Machinery Co.**, **supra**. Consequently, no relief is due on the Schmitts' fifth and final issue.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/23/2024

---

and you would have to have a good solid foundation, especially around that bend").

[22] Specifically, Mr. Oden testified that around December of 2021, Duquesne Light was called due to overgrown tree branches in the at-issue area. N.T. at 64. Mr. Oden relayed that the tree service crew was unable to use their bucket truck, and had to free climb the trees to maintain them. *Id.* at 65. Mr. Oden also stated that the crew was unable to bring a wood chipper because it "was too narrow." *Id.* at 66. Similarly, Ms. McDermott testified that contractors "have had difficulty getting in there, because of the tight squeeze on that road, on the elbow, that it is very difficult for them to get in. And that sometimes requires twice as much work on their part." *Id.* at 173.